# CIRCUIT COURT NO. 2 OF MORE CITY.

Filed December 1, 1925.

———

See 151 Md. 321.

———

EX PARTE IN THE MATTER OF THE TRUST ESTATE UNDER THE WILL OF JOHN Q. A. HOLLOWAY.

———

SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, A BODY CORPORATE, TRUSTEE, PETITIONER,

VS.

GRACE SUZANNE HOLLOWAY, INFANT. A NON-RESIDENT, MARIE CALOU. PURPORTING EXECUTRIX OF THE WILL OF JOHN E. HOLLOWAY, DECEASED, A NON-RESIDENT, ET AL., RESPONDENTS.

———

*Isaac Lobe Straus, J. Paul Schmidt* for Marie Calou, et al.

*John B. Deming, Edgar Allan Poe, Robert R. Carman, Henry H. Dinneen* for various interests of the estate.

STANTON, J.——

The Safe Deposit and Trust Company of Baltimore, a body corporate of the State of Maryland, trustee, filed a petition in the above entitled cause to obtain the construction of certain clauses in the last will and testament of John Q. A. Holloway. The testimony shows that John Q. A. Holloway died on or about the 14th day of January, 1904, leaving a last will and testament, under which certain trusts were created, the administration of which trusts has been brought under the jurisdiction of this Court. He left surviving at the time of his death Susanna Holloway, his widow, and four children, John E. Holloway, Edward L. Holloway, Anna Elizabeth Holloway and Clarence J. Holloway. The widow, Susanna Holloway, departed this life on the 5th day of December, 1911, leaving a last will and testament, in which certain trusts were created, and under a bill of complaint filed on the 2nd day of March, 1925, jurisdiction of the administration of these trusts was assumed by this Court. The Safe Deposit and Trust Company, trustee, under the will of Susanna Holloway, has submitted the same for construction and direction under Clause Eleven of said will. The questions to be determined arise out of the following facts:

John E. Holloway married Ann McClellan Holloway in the City of Lexington, Kentucky, about June 6th, 1889. There was one child born as a result of this marriage, but it lived only a few hours after birth. Shortly after their marriage, John E. Holloway and his wife traveled extensively, finally locating in Biarritz, France. While living in France differences arose between them resulting in an agreement of separation, which was executed May 5th, 1911, and in which certain provisions were made for the wife, out of the income of the trust estate in favor of John E. Holloway under the last will and testament of his father. This agreement has been considered by the Court of Appeals of Maryland in two cases, and has been ratified and confirmed. John E. Holloway, while living in Biarritz, became acquainted with Marie Calou, one of the defendants in

this cause, and his interest in and association with Marie Calou is said to be the reason for the separation between him and his wife.

In the year 1912, after the agreement of separation was executed, John E. Holloway and Marie Calou came to the United States of America, and took up their residence in the City of Reno, State of Nevada. On September 23rd, 1912, Grace Suzanne Holloway, the infant defendant in this cause, was born in the City of Reno. Marie Calou is her mother, and John E. Holloway is her father. John E. Holloway, Marie Calou and Grace Suzanne Holloway lived together as a family in the City of Reno until 1915, when they moved to the City of Berkely, State of California, and there they lived together as a family until January 29th, 1925, on which day John E. Holloway died.

He left a last will and testament, whereby he appointed Marie Calou his executrix, and gave or sought to give all of his residuary property in the estate to the infant defendant, Grace Suzanne Holloway, whom he described as his daughter, born of Marie Calou, and in whose favor he endeavored to exercise the power of testamentary appointment in remainder, conferred upon him under the will of his mother, as well as that of his father, John Q. A. Holloway.

After residing in Reno for a period of time, John E. Holloway instituted a divorce proceeding against Ann M. Holloway on January 21st, 1913. The defendant appeared in this proceeding and answered under date of April 19th, 1913. This proceeding was dismissed on the 21st day of May, 1913, and no divorce was ever obtained by him or his wife.

At the time of the birth of Grace Suzanne Holloway, the birth certificate was filled out and signed by John E. Holloway, in which he declared himself to be the father of Grace Suzanne Holloway. Since her birth she has lived in his home, has been supported and provided for by him, acknowledged and proclaimed to the world as his child. It is contended for Grace Suzanne Holloway that by virtue of, and under the provisions of the law of the State of Nevada, and since 1915, by virtue of, and under the law of the State of California, Grace Suzanne Holloway has been legitimated as the child

of John E. Holloway, and having acquired the status of legitimacy in those States she is entitled to come into the Courts of this State, with all the rights and privileges that were conferred upon her as the legitimated child of John E. Holloway. This contention raises sharply the question to be determined under the will of John Q. A. Holloway, wherein he said in the eighth clause of his will, *"and at the death of my said son John E. Holloway, in trust to divide the corpus or principal of the property and estate so theretofore held in trust for him among his children and descendants in such portions as my said son shall by last will and testament direct or appoint."*

The clauses of the last will and testament of John Q. A. Holloway, which are now before the Court, as particularly bearing on the matter at issue, are Sub-paragraph (B) of Paragraph Eight and Paragraph Nine, reading as follows:

"(b) One-sixth of the entire residue of my property, and estate I gave, devise and bequeath to the Safe Deposit and Trust Company of Baltimore, in trust to invest the same in such manner as to the said trustee shall seem best, and to collect the income from time to time arising from the investment so to be made by it, and after paying thereout all proper charges, to pay over the net income at stated periods to my son John E. Holloway, so long as he shall live, and at the death of my said son John E. Holloway, in trust to divide the corpus or principal of the property and estate so theretofore held in trust for him among his children and descendants in such portions as my said son shall by last will and testament direct or appoint, but if my said son shall die without having exercised such power of testamentary appointment, then at his death said trustees shall divide the same in equal portions among the children of my said son John E. Holloway, if any he shall have then living, and the then living issue of any child of his who may then be dead, such issue to represent its or their parent in the distribution and to take only the share or portion to which the parent if then living would be entitled. But if my said son John E. Holloway shall die without leaving children or descendants him surviving, then and in that event, the

said trustee shall at his death pay over and deliver absolutely one-third of the corpus or principal of said trust fund and property to my son Edward Lee Holloway, free and clear of all trust, and shall continue to hold the remaining two-thirds thereof in trust in equal shares for my daughter Anna Elizabeth Holloway and my son Clarence J. Holloway, in accordance in all respects with sub-paragraphs "d" and "e" of this paragraph of my will, and upon the same terms and limitations and with the same powers as it holds the portions of my estate thereby given in trust for their benefit respectively, including the powers set forth in the ninth paragraph hereof; with the proviso however, that in any event if my said son John E. Holloway shall leave a widow him surviving and born in my lifetime, the trustee shall at his death retain for division at her death or remarriage, whichever shall first occur, one hundred thousand dollars of the trust fund and property, and shall only during her life or widowhood, pay over to her at regular stated periods the income arising from said sum of one hundred thousand dollars, which principal sum it shall divide as hereinbefore provided at the death or remarriage of such widow."

"Ninthly. In order to facilitate the management of the portions of my property and estate given by this my will in trust, as hereinbefore set forth, to the Safe Deposit and Trust Company of Baltimore, I do hereby grant to, and confer upon the said trustee full power and authority in its discretion, from time to time, to sell, mortgage, lease, dispose of, assign or convey absolutely or otherwise, the whole or any portion or portions of the property and estate so given to it in trust, and, in the event of any such disposition of any portion of my property and estate by said trustee in pursuance of the power hereby conferred upon it, the proceeds of all such sales or other dispositions of any of said property shall be reinvested by the trustee having made such sales, or other dispositions, in such manner as to it shall seem best, and shall be held by it, or its successors, if any such there shall be, on the same trusts and for similar uses, and with like powers in relation thereto, as the property and estate so sold or disposed of had been theretofore held by it. And I do hereby likewise grant to and confer upon

my said trustee full power and authority in its discretion to sell any portion of the trust property for the purpose of making any division required by the provisions of this my will, and I do likewise authorize and empower my said trustee to make any division in kind of the trust estate or any part thereof which may be requisite to carry into effect the provisions hereof. And I hereby authorize said trustee to execute, acknowledge and deliver all conveyances or instruments of writing which may be necessary to fully execute the powers conferred upon it by this my will, and I declare that purchasers from the said trustee shall not be liable to see to the application of the purchase money. And I further declare that all powers conferred upon said trustee shall be exercisable to their full extent by its successors in trust, if any such there shall be. And I also declare it to be my desire that the trusts by this my will created be administered by the trustee under the supervision of a Court of Equity."

The determination of the powers of testamentary disposition, as well as the class of persons to take under the will of John Q. A. Holloway, will determine the same issues that arise under the will of Susanna Holloway, the mother of John E. Holloway.

There are two concessions made in the argument which have a bearing in the determination of this case. First, John Q. A. Holloway having died in the City of Baltimore, and his last will and testament having been probated in this State, his will is to be construed under the laws of this State; and, secondly, that wherever the word "child" or "children" is used in his will it means legitimate child or children, generally understood as children born in wedlock. The solicitor for the infant defendant contends that although born out of wedlock, she comes squarely within the class of legitimate child, because she acquired that status in the State of Nevada, and that by the comity of States, she maintains that status in this jurisdiction, with the rights of inheritance and succession that flows therefrom. But a review of the authorities submitted in the arguments and in the briefs has led the Court to the conclusion that the status conferred by the laws of the States of Nevada and California, do not give the infant defendant the right to the

trust property covered by the will of John Q. A. Holloway or Susanna Holloway, the mother and father of John E. Holloway.

Begining with the case of Barnum vs. Barnum, in 42 Md., page 251, our Court of Appeals at various times has had before it for determination in several different cases one or more of the issues involved in this case, and these decisions when read and applied to the facts of this case are conclusive of the issues to be decided.

Jackson vs. Jackson, 82 Md. 17; Harding vs. Schapiro, 120 Md. 541.

The case of Barnum vs. Barnum involved a special Act of the Legislature of Arkansas to legitimate John R. Barnum, a natural son of Dr. Richard Barnum. It undertook to confer on John R. Barnum the rights of heirship. But our Court of Appeals said, when the matter was submitted to it for determination, that the special act of the Legislature of Arkansas could have no extra-territorial effect in this State, and conferred no inheritable rights on John R. Barnum in his effort to obtain property, the distribution of which was controlled by the laws of the State of Maryland. The Court says in that case:

"But as to capacity to acquire property beyond the State passing the Act, by virtue of the particular *status* given the party, that the Legislature could not confer. Even if the act had professed to legitimate John R. Barnum, without reference to previous marriage, it could have no operation here and no rights involved in this case could be affected by it. This would seem to be clear both on reason and authority."

The rights claimed for the infant in this case are strikingly analogous to those claimed by John R. Barnum. It is contended for the infant defendant that in the Barnum case the Court did not go any further than to decide that the Act of the Legislature of Arkansas had no extra-territorial effect, and could not confer inheritable rights in this jurisdiction when it undertook to declare John R. Barnum to be an "heir" of Doctor Richard Barnum. Nevertheless, the principles announced in that case are controlling in this case, even if it should be true, as argued by the solicitor for the infant, that the precise point now before the Court was not involved in that case. But this Court cannot accept such a construction of the decision in that case—because first—Dr. Richard Barnum left a will (42 Md. 268) and John R. Barnum was claiming under that will. Secondly, the Court of Appeals had before it and was dealing with the right to acquire property by virtue of a particular *status* given John R. Barnum, and these conditions make the decision applicable to this case.

It is immaterial, if it were true, that his rights as heir were sought to be enforced; whereas in this case personal property is involved.

Judge Gray, in the opinion in Ross and Ross, in 129 Mass., page 243, comments on Barnum vs. Barnum, and says that the point decided was that the child was not an heir "of the latter within the meaning of the will of the latter's father, who nine years before the passage of the Arkansas statute, died domiciled in Maryland, the law of which does not appear to have permitted the creation of an *heir* in that manner."

Neither does the law of Maryland permit a child born out of wedlock to be legitimated in the manner which is permitted by the laws of Nevada. Code, Article 46, section 6, says: "If any man shall have a child or children by any woman *whom he shall afterwards marry*, such child or children, if acknowledged by the man, shall in virtue of such marriage and acknowledgment be hereby legitimated and capable in law to inherit and transmit inheritance as if born in wedlock." A comparison of the statutes of the three States will show that the legitimating statutes of Nevada and California are in conflict with those of Maryland, and our Court of Appeals has said in Harding vs. Schapiro, 120 Md., page 548, "that the *status* or condition of any person with inherent succession capacity or inheritance is to be ascertained by the law of his domicile which creates the status, at least when the status is one which may exist under the laws of the State in which it is called in question, *and when there is nothing in those laws to prohibit giving full effect to the status and capacity acquired in the State of the domicile.* Speaking generally, it may be said that the capacity of the donee to take is governed by the law of the domicile."

This statement is taken from the case of Ross and Ross, which is so strongly relied on by the solicitor for the infant defendant. The Court in that case was dealing with the rights of a child who had been adopted, and was endeavoring to assert inheritable rights in the estate of its foster father. In this case, we have a child born out of wedlock and legitimated in Nevada claiming the rights of that status in the State of Maryland, and also claiming to be included within the class of child or children which were in the contemplation of John Q. A. Holloway at the time that he exeuted his will. The issue in this case is not the same issue that was involved in Ross and Ross, because the rights sought to be enforced are not such as flow from the relationship between the infant defendant and John E. Holloway, its natural father, but are rights sought to be conferred by the exercise of a power of appointment given John E. Holloway under the will of his father. Grace Suzanne Holloway was not born at the time of the death of John Q. A. Holloway, and certainly he could never actually have had her in mind, nor was she born in wedlock, and it is conceded that it is only such children who are recognized as legitimate, and come within the language of the will when it defines "child" or "children." It seems irresistibly true that if any child born out of wedlock could be brought within the class defined in the will of John Q. A. Holloway it could only be children who were born out of wedlock, but subsequently legitimated by marriage of the man and woman and acknowledgment of the child by the father, in compliance with the laws of the State of Maryland.

Marriage is a status. But it is not every status acquired in a foreign State which will be recognized in this State. Illustrations have been given in the decisions of the Court of Appeals as in case of polygamy, incest and miscegenation, and it has been stated such a status would not be recognized under the laws of this State.

82 Md., pages 29 and 30.

The public policy of each State affecting public morals and the good order of society is in its own keeping, and its laws to maintain its standards, are not set aside because they are in conflict with those of another State in the Union, which might be more liberal or modern in its policy.

There is a strong sympathetic appeal on behalf of the infant defendant at almost every angle from which this case might be considered. But the law cannot mitigate the embarrassment which she suffers in this jurisdiction in her effort to enforce property rights, and the responsibility for her perdicament is on the man and woman who brought her into this world.

From the foregoing it would appear that Grace Suzanne Holloway does not take any part of the trust estate created by the wills of John Q. A. Holloway and Susanna Holloway because she is not a child of John E. Holloway within the language and contemplation of those wills and the property has passed in remainder to the devisees named by them who were to take in remainder upon the contingency of the death of John E. Holloway without children him surviving, and a decree will be signed accordingly.