CHARLES H. HARDING vs. ALMA SCHAPIRO, In
· Her Own Right, and Also by Margaret W.
Schapiro, Her Mother and
Next Friend.

*Wills: interpretation.   Personal rights: majority;
law of domicile.*

A testatrix died abroad, but her will was admitted to probate in
Baltimore City.  In a proceeding filed in the Circuit Court of
Baltimore by one of the legatees to construe a certain clause of
the will and for an accounting by the trustee for the said leg-
acy and income left in trust for her by the said clause, it was
*held,* that the admission of the will to probate in Baltimore
City, in so far as such proceedings were concerned, conclu-
sively established the residence of the testatrix in Baltimore
City.                                           pp. 548, 549

In general, the personal rights of a party—his majority or
minority, his marriage, succession or inheritance—are gov-
erned by the law of his domicile.                    p. 548

Wills of personal property must be governed with reference to
the law of a testatrix's domicile at the time of her death, unless
it appears in the face of the will that it should be controlled
with reference to some other law.                    p. 552

By her will a testatrix had left a legacy to a trustee to be held
in trust for a niece who was a resident and subject of Austria,
*until she reached her majority; held,* that in the absence of
any evidence that the testatrix intended her will to be con-
strued in reference to any other law than the law of Mary-
land, the legatee (having attained the age of 18 years),·was
entitled to receive the legacy, and her right would not be
affected by any Austrian law as to the time of her reaching
her maturity.                                        p. 552

*Decided April 11th, 1913.*

Appeal from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Donald B. Creecy* (with whom was *Eugene O'Dunne,* on the brief), for the appellant.

*John B. Deming* (with whom was *Whitelock, Deming & Kemp,* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

Mary Mercer Harding, the wife of Charles H. Harding, died at Vienna, Austria, in September, 1904. By her last will and testament, which was dated July 6th, 1901, and admitted to probate in the Orphans' Court for Baltimore City on the 26th day of September, 1904, Charles H. Harding, a resident of Baltimore City and the husband of the testatrix, was granted letters testamentary upon her estate. Her will contained the following bequests:

"To my nieces, Alma Schapiro and Vera Schapiro, I leave the sum of $5,000.00 each, to be held in trust for them by the Safe Deposit and Trust Company and invested by it, and the principal and all income held until their majority. In the event of the death of either niece, the portion of said niece to go to my husband, Charles H. Harding."

Alma Schapiro, one of the legatees, was born in Austria and is an Austrian subject. Under the law of Austria she does not attain her majority until the age of twenty-four years; but by a special statutory provision of the Austrian Code the Guardian's Court, under certain conditions, may declare an infant to be of full age who has completed his or her twen-

tieth year. When this declaration has been made in conformity to the act it "has precisely the same legal effect as the actual attainment of majority." On April 2nd, 1910, after she had attained the age of twenty years, the Appropriate Court of the Empire of Austria in pursuance of the Code declared and decreed that Alma Schapiro had attained her legal majority. After she had reached the age of twenty-one years, she filed a bill of complaint in the Circuit Court No. 2 of Baltimore City, against Charles H. Harding and the Safe Deposit and Trust Company, trustee as aforesaid, praying particularly for the construction of the above quoted clause of Mrs. Harding's will, and for an account of the legacy and income in the hands of the trustee, and that the net proceeds be paid over to her by the trustee free of the trust.

After setting out the facts above stated, the bill charged that for all purposes whatsover she had attained her full legal majority by the laws of Austria, and having also attained the age at which a female ward is entitled under the laws of Maryland to receive a legacy given her by last will and testament and to execute a legal release therefor, she was entitled to have paid over and transferred to her absolutely and free from the trust the said legacy and accumulated interest, less such proper allowances as a trustee might be entitled to.

The bill further alleged that Charles H. Harding, who by the terms of the will is entitled to the legacy in the event of the death of the plaintiff, denied her right to receive the same, because he contended that by the true construction of the will the plaintiff was not entitled to receive the legacy until she attains the age of twenty-four years,—that being the date at which the plaintiff's majority is fixed by the general law of Austria.

The Safe Deposit and Trust Company, Trustee, filed an answer, submitting the determination of all questions involved and the construction of the above-quoted clause of the will to the decision of the Court. It also filed a schedule or

statement of the trust property in its hands as trustee for the plaintiff. The answer stated that the question, whether according to the terms of the will, the legacy became payable to the plaintiff upon her attaining the age of eighteen years, or will become payable to her upon her attaining the age of twenty-one years, or the age or twenty-four years, or upon the entry of such decree by the Austrian Court emancipating her, are legal questions involving the construction of the will, as well as the meaning and effect of foreign laws, and that, as trustee for both of the parties in interest, it submitted these questions to the determination of the Court. It admitted that it had refused to pay the legacy to the plaintiff until said questions had been first determined by some competent Court.

Charles H. Harding filed an answer and cross-bill. The cross bill asked that the legacy to the plaintiff be declared void, or, if the Court should be of opinion that it was not void, then that a decree be passed declaring that the plaintiff was not entitled to receive the legacy until she had reached the age of twenty-four years. The plaintiff excepted to the fifth and sixth paragraphs of the answer, and demurred to the whole cross bill. The defendant petitioned the Court to amend the fifth paragraph of the answer, and leave was granted to make the amendment. The Court sustained the demurrer to the cross bill and it was dismissed. It also sustained the demurrer to the fifth and sixth paragraphs as amended. The defendant then, by leave of the Court, filed an amended answer and another cross bill. The eighth paragraph of the plaintiff's bill set up the Austrian decree above referred to declaring her of full legal age, and the real defense to this suit is disclosed by the fifth paragraph of the amended bill and the fourth paragraph of the new cross bill, which prays: First, that the legacy to the plaintiff be declared void; and secondly, that it be not void, that a decree may be passed declaring that by the true construction of the will of Mrs. Harding the plaintiff is not entitled to receive

said legacy until the expiration of the twenty-fourth year of her life.

The fifth paragraph of the amended answer is as follows:

(5) "That in response to the eighth paragraph of said bill, this defendant says he is not informed thereon, and therefore neither admits nor denies the same, but calls for full proof thereof, and further answering the said paragraph this defendant says that, if any such decree as in said paragraph of said bill set forth, has been passed by the Court therein mentioned, the said decree was obtained in a cause to which this defendant was not a party and of which he had no notice, and upon the representation of the said plaintiff and her mother and guardians in the said paragraph mentioned, that she desired to go to the United States of America on account of her health, and that the said Court was not informed that the said decree might in anyway affect the rights of said plaintiff or the rights of this defendant with respect to a legacy contained in a will of a citizen of the United States (though this defendant does not admit but on the contrary denies that said decree can have any such effect) ; and this defendant further avers that said decree if passed as stated in said bill, which he does not admit, was obtained by wilful and fraudulent suppression of the true facts in this case whereby the said Court was deceived, and this defendant further says that by the laws of Austria said decree as set forth in said bill, being merely a declaration that said plaintiff is of full age, without regard to the true age does not, and by said laws of Austria can not, have the effect of entitling the plaintiff to said legacy before she has arrived at the age of twenty-four years; and further that by said laws said Court has no jurisdiction to pass any decree of declaration of majority whose effect would be to entitle said plaintiff to said legacy before she has arrived at the age of twenty-four years."

The fourth paragraph of the cross bill is as follows:

(4) "That if notwithstanding the advice given by your orator as hereinbefore set forth and the matters and facts

hereinbefore alleged, this Honorable Court shall be of opinion that said Alma Schapiro is and your orator is not entitled to said legacy, still as your orator is advised and therefore alleges, said Alma Schapiro is and always has been a citizen and resident of Austria and subject to its laws, and that she has not yet attained the age of twenty-four years, and that by said laws of Austria she will not attain her majority until she has arrived at the age of twenty-four years, and that if any such decree as is in said bill of said Alma Schapiro set forth has been passed by the Austrian Court therein mentioned (which your orator does not admit), then by the laws of Austria said decree, being as is alleged in said bill, merely a declaration that said Alma Schapiro is of full age without regard to her true age, does not and can not have the effect of entitling said Alma Schapiro to said legacy before she has arrived at the age of twenty-four years; and further that by said laws said Court has no jurisdiction to pass any decree or declaration of age whose effect would be to entitle said plaintiff to said alleged legacy before she has arrived at the age of twenty-four years."

The plaintiff excepted to the whole amended answer and to the fifth paragraph thereof, and demurred to the whole second cross bill. The demurrer to the cross bill was sustained and it was dismissed. The exceptions to the whole amended answer were sustained, and leave to further amend the answer was refused.

A commission was issued to Charles Denby, residing in Austria, to take the testimony of certain witnesses, and under it the depositions of the plaintiff, her mother, and Dr. Victor Heindl, an Austrian attorney, were taken and returned. A duly authenticated copy of the Austrian decree referred to was filed. The deposition of Charles H. Harding was also taken which showed that Mrs. Harding knew that under the Austrian law the age of majority was twenty-four years.

It appears from the depositions that the plaintiff was born at Vienna on February 23rd, 1900, and has since resided there and in other parts of Austria; that her father is now dead, and that he was an Austrian subject; that her mother is living and that Mrs. Harding was an aunt of the plaintiff. It is also shown that by the 252d section of the Civil Code of Austria it is provided that:

"The Court having guardianship jurisdiction may, after obtaining the approval of the guardian and in all events also of the nearest relatives, grant to a minor, who has passed his twentieth year, dispensation from the disabilities of age, and declare him to be of full age. If the carrying on of a business or trade is permitted to a minor by the authorities, then in such case he is thereby declared at the same time of age. The declaration of full age has altogether like legal effect as the actual attainment of majority."

In conformity with the approval of her mother and her guardian and co-guardian, Dr. Rudolph Jahn, by decree of Court the plaintiff was declared to be of majority by dispensation of age. The plaintiff stated in her deposition that her mother and guardian applied to have her declared of legal age, because her guardian wished to be released from his duties and to leave Vienna on account of his health, referring evidently to Dr. Jahn; and that she had to declare verbally that she knew what she was doing; that one of her objects in obtaining the decree was to be able to secure this legacy before the age of twenty-four years, although that was not her principal object; that she did not inform the Court of the provision of the will of Mrs. Harding, and that the nature of the provision now before the Court was not called to the attention of that Court. Dr. Heindl deposed as to the provision of the Code quoted, and referred to a number of decisions in the Austrian Court in which it had been construed.

Upon the deposition of Dr. Heindl and the facts above referred to the defendant contents: first, that the decree was obtained by fraud and is impeachable in this case on that

ground; and secondly, if it be valid, that under the decisions of the Austrian Courts, as stated by Dr. Heindl, the plaintiff is not entitled under the decree to demand and receive the legacy until she reached the age of twenty-four years. The lower Court held the decree to be conclusive upon the parties to this cause, and decreed that the legacy and the accumulated interest should be paid over to her by the Safe Deposit and Trust Company, less proper charges, disbursements, costs and a counsel fee of one hundred dollars to Charles McHenry Howard, the counsel for the trustee. The appeal before us was taken by Charles H. Harding from that decree. A question was made as to certain irregularities in the pleadings and of certain errors respecting the action of the Court thereon; but as the case was tried upon the bill and answer of the Safe Deposit and Trust Company, trustee, and the replication thereto and as the appellant had the benefit of all his evidence and defenses in this Court and the Court below, the question of pleading need not be considered.

The position of the appellant is that this case is to be determined by the application to the facts of the facts of the general principals of private international law, and that since the plaintiff is an Austrian subject her rights must be determined by the laws of Austria, and, not having reached the age of twenty-four years, the decree of the Austrian Court under the laws of Austria is ineffectual to establish her present right to the legacy. It is undoubtedly true that the personal rights of a party, his majority, or minority, his marriage or succession, or inheritance is, as a general rule, governed by the law of his domicile. This principal is thus stated by JUSTICE GRAY in *Ross* v. *Ross,* 129 Mass. 243, and is generally approved by the Courts of this country:

"The *status* or condition of any person, with inherent capacity of succession or inheritence, is to be ascertained by the law of his domicile which creates the *status,* at least when the *status* is one which may exist under the laws of the State in which it is called in question, and when there

is nothing in those laws to prohibit giving full effect to the *status* and capacity acquired in the state of domicile."
Speaking generally, it may be said that the capacity of the donee to take is governed by the law of the domicile.

Conceding *ex gratia,* that the Austrian decree was obtained by fraud, or that its legal effect under the decisions of Austria was not to confer upon the plaintiff the present right to receive this legacy, the decree should be affirmed upon well settled principles governing the construction of wills of personalty in such cases as this. The case does not require the application of the rules of private international law, because it is not governed by those rules.

The legal effect of the admission of Mrs. Harding's will to probate by the Orphans' Court of Baltimore City, in so far as this case is concerned, was to conclusively establish her residence or domicile in Baltimore City at the time of her death. It is provided by section 14, Article 93 of the Code that:

"Whenever any person shall die intestate, leaving in this State personal estate, letters of administration may forthwith be granted by the Orphans' Court of the county wherein was the parties' mansion house or residence, etc.," and by section 341 of the same article, it is provided that:

"Any will or codicil may be proved in any county or Baltimore City wherein letters testamentary or of administration may be granted."

In *Stanley* v. *Safe Deposit and Trust Company,* 87 Md. 450, these provisions of the Code and the effect of the probate of the will were considered. In that case the will of Joseph Cox had been admitted to probate by the Orphans' Court of Baltimore County, and thereafter a petition was filed alleging that he was a resident of Baltimore City and that his will had been improperly admitted to probate in Baltimore county, and asking that an issue be sent to a Court of law involving the inquiry as to whether Cox at the time of his death was a resident of Baltimore City or Baltimore county. The petition was dismissed and this Court on appeal, speaking through JUDGE McSHERRY, said:

"It is undoubtedly true that the Orphans' Courts are tribunals of special, limited jurisdiction. They have no powers other than those conferred by statute and such in addition as are incident and necessary for the performance of the ones expressly given. But there can be no question that to them is committed exclusively the authority to admit wills to probate and to grant letters testamentary, and in cases of intestacy, letters of administration. This authority is, whilst exclusive, itself also limited. There are circumstances which restrict its exercise to prescribed localities. If the circumstances which give rise to the jurisdiction do not exist in a particular case the authority to act does not arise. But who is primarily to determine whether those circumstances do exist? The Code fixes the place where a decedent's will must be probated, by prescribing that it may be proved in the county wherein letters testamentary or of administration may be granted; and if such letters may be granted in Baltimore City, then probate may be had in the Orphans' Court of the city. By section 14, Article 93 of the Code it is enacted that in cases of intestacy letters of administration may be granted by the Orphans' Court of the county wherein the deceased's mansion house or residence was situated, or, if he had no mansion house or residence, then letters may be granted in the county where he died. It is apparent, then, if Cox had no mansion house or residence in Baltimore county, and if he died in Baltimore City, that the Orphans' Court of Baltimore City alone had authority to admit his will to probate; and it is equally manifest that if he was, at the time of his death, a resident of Baltimore county, though he died in the city, the Orphans' Court of the county was the proper tribunal to take probate of his will. Now, it is obvious that when the will, wherein the testator declared himself to be a resident of Baltimore county, was presented to the Orphans' Court of that county for probate, that Court was required to decide and determine whether it had jurisdiction to admit the will to probate, and therefore, at the threshold, had power to decide and determine whether Mr. Cox, had been, in fact, at the time of his death, a resident of the county. This was an inquiry which it was necessary for

the Orphans' Court to make and to decide before it could proceed either to admit the will to probate or to grant letters of administration. The question as to *where* the decedent had his residence at the time of his death was essentially within the Orphans' Court's jurisdiction to decide when the will was propounded, unless there had then been framed for trial in the Circuit Court an issue presenting that inquiry for the finding of a jury. Necessarily and incontestably, as the right to admit the will to probate depends, in such a case as this, upon the residence of the testator at the time of his death, the jurisdiction to decide where that residence was is involved in, and is an inseparable part of, the power to grant the probate. In determining whether the will should be admitted to probate at all the Orphans' Court was compelled itself to decide the question of the decedent's residence, as no such issue of fact, for trial by a jury, had then been proposed, and the Court must have decided that such residence had been in Baltimore county, because in no other way could the Court have adjudged that this will was entitled to be admitted to probate in that county. This decision may be right or it may be wrong on the facts which were in evidence before the Court; but the question is, not whether the Court rightly decided, but whether it had a right to decide what it did decide. If it had a right to decide the question of residence, then it had the right to determine whether it had jurisdiction to admit the will to probate, and if it decided that preliminary question erroneously its decision was subject to review on appeal or to reversal by the Court itself upon proper application made to it for that purpose in due season. *Raborg* v. *Hammond*, 2 Har. & G. 48; *Shultz* v. *Houck, etc.,* 29 Md. 26. The evidence upon which it based its decision could not be looked to by this Court, even if it were in the record, to determine whether the Orphans' Court correctly decided the question of residence, except upon an appeal from that decision, and there is no such appeal before us."

The residence of Mrs. Harding in Baltimore City at the time of her death being established by the probate of her

will, the general rules that wills of personality must be construed with reference to the law of a testator's domicile at the time of his death, unless it appears on the face of the will that it could be construed with reference to some other law, must be applied. This principle of construction is thus stated by JUSTICE STOREY in *Harrison* v. *Nixon,* 34 U. S. 483:

"The language of wills is not of universal interpretation, having the same precise import in all countries, and under all circumstances. They are supposed to speak the sense of the testator, according to the received laws or usages of the country where his domicile is, by a sort of tacit reference; unless there is something in the language which repels or controls such a conclusion. In regard to personality in an especial manner, the law of the place of the testator's domicile governs in the distribution thereon, and will govern in interpretation of wills thereon; unless it is manifest that the testator had the laws of some other country in his own view." See also *In re Price, Tomlin* v. *Latter* (1900), 1 Ch. Div. 442; and *In re De'Este's Settlements, Poulter* v. *De'Este* (1903), 1 Ch. Div. 898.

Construing this will, as we must, with reference to the laws af Maryland,—there being nothing before us to show that the testatrix intended it to be construed with reference to any other law, the plaintiff is now entitled to reecive this legacy and its accumulated interest, and the decree appealed from must, therefore, be affirmed. We find no basis for the contention that the legacy is void for uncertainty. This contention was made in the appellant's pleadings, but was not urged in the argument or noticed in the brief, and we assume it is abandoned. Nor can we assent to the proposition that it was the intention of the testatrix that the plaintiff's right to the possession of the legacy should be postponed until her younger sister should reach her majority. We see no good reason for such a construction.

> *Decree affirmed, the costs to be paid by the
> Safe Deposit and Trust Company,
> Trustee, out of the trust fund.*