MARY PERSSON ET AL. *v.* THOMAS J. DUKES,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
DORA E. DUKES

[No. 1318, September Term, 1975.]

*Decided October 6, 1976.*

The cause was argued before GILBERT, C. J., and MORTON, POWERS and DAVIDSON, JJ.

*Phillip L. Felts,* with whom were *Ronald G. Kane* and *Schuman & Kane, Chartered,* on the brief, for appellants.

*Maurice C. Lewis* for appellee.

POWERS, J., delivered the opinion of the Court.

Maryland has, as do most if not all of the states, a statute which provides that a legacy contained in a decedent's will does not lapse because the legatee predeceased the testator. Statutes of this kind virtually turn around the common law rule, and although differing in some respects from state to state, they have a similar purpose. They express, for the vast majority of testators, a true intent which might otherwise go unexpressed, and at the same time, leave every testator entirely free to express a different intent. When the testator's intent is supplied by the statute, it is supplied only to fill a void. A testator's expressed intent prevails over the statute.

The question we are called upon to decide in this case is whether Maryland's anti-lapse statute applied to the will of Dora E. Dukes.

We shall recount the facts which give rise to the question. In 1948 Hunter P. Dukes and his wife, Dora E. Dukes, lived in the District of Columbia. On 6 March of that year each executed a will. Each testator gave all of his property to the other, in identical words, except for the names. Neither made any further disposition of his property. The same persons witnessed both wills.

At a later time, not disclosed by the record, but not significant, Mr. and Mrs. Dukes became residents of Dorchester County, Maryland. They had no children. On 19 August 1975 each was fatally injured in an automobile accident which occurred in nearby Delaware. Hunter died at 12:45 P.M. and Dora died at 2:35 P.M. on that day.

Each will admitted to probate in the Orphans' Court for Dorchester County, and letters of administration in each estate were issued to Thomas J. Dukes, an heir of Hunter. It goes without saying that upon Hunter's death his will became operative, and under his bequest to Dora, she became entitled to his net estate. What happened to Dora's estate, augmented by Hunter's, when she died less than two hours later, depends upon whether the anti-lapse statute applied. If it did, her bequest to Hunter would operate to

give her entire estate to those persons who would take as the heirs of Hunter, if he had survived Dora and died intestate. If the statute did not apply, then Dora died intestate, and her entire estate would go to those persons who would take from her under the intestacy laws.

As personal representative of the estate of Dora E. Dukes, Thomas J. Dukes filed a bill of complaint in the Circuit Court for Dorchester County against the heirs of Dora. The complaint recited the deaths of Mr. and Mrs. Dukes and the provisions of their wills. It stated that the heirs of Dora were claiming under her will,[1] and prayed that the court render a declaratory judgment as to the legatees, heirs at law and persons entitled to the distribution and proceeds of Dora's estate.

After a hearing in December 1975 the court, Charles E. Edmonson, Judge, entered an order declaring that the persons entitled to distribution of the proceeds under the estate of Dora E. Dukes were the heirs of Hunter P. Dukes. This appeal by Dora's heirs followed.

The statute which, if applicable, would prevent the lapse of the legacy in the will of Dora to her husband is set out in Code, 1957 (1964 Repl. Vol.) Art. 93, § 354, which said:

> "No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identfied as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator."

Although substantial changes were made in the section by

---

1. They could have no claim under her will. Their claim would have to be under the intestacy laws.

Ch. 3, § 1 of the Laws of 1969,[2] they apply, by the terms of that Act, to wills executed on and after 1 January 1970. It was so held by the Court of Appeals in *Stewart v. Whitehurst*, 268 Md. 589, 303 A. 2d 393 (1973). The result of applying the statute in that case was stated by the Court of Appeals. It said, at 592:

> "In consequence, the provision made by Robert [Stewart, the husband, who survived his wife] for Suzette [Stewart, the wife, who predeceased the testator] passed directly to Suzette's next of kin living at the time of Robert's death, in such proportions as they would have received had she survived Robert and died intestate, *Simon v. Safe Deposit & Trust Co.*, 190 Md. 468, 59 A. 2d 199 (1948); Sykes, *Probate Law and Practice* §§ 131-134 (1956)."

Appellants contend that there are two reasons why the anti-lapse statute should not apply in this case.

This first contention, not previously considered by an appellate court in Maryland, is that because the wills of Hunter and Dora were mutual and reciprocal wills, executed pursuant to an agreement or compact between the testators, by which each left his property to the other and made no provision for a third person, the two wills constituted in legal effect a single will, operative as the will of the first to die, and inoperative and without legal existence as a will of the survivor.

The second contention is that the circumstances surrounding the execution of the wills compel the finding of an implied condition that the legatee survive, and are more than sufficient to establish the intent of the testatrix that the lapse statute should not apply.

We think that the contentions as made suggest parallel and substantially overlapping pathways to follow in the

---

2. In that Act the revised section was designated as § 4-403 of Art. 93. It is now § 4-403 of the Estate and Trusts Article.

search for the answer to the single question, What was the testator's intent?

Appellants support their first contention with the reasoning and holdings found in the reported decisions in two cases in Iowa, one in West Virginia, and one in Tennessee, and with citation of 57 Am. Jur., *Wills*, § 737 (1948). Because the Am. Jur. text is based upon and summarizes the holdings of the cases in the jurisdictions we have mentioned, and itself virtually duplicates a portion of Annot., 169 A.L.R. 9, 86-89 (1947), which it cites, we quote from it at length:

> "Statutes have been enacted in many jurisdictions designed to prevent, under certain circumstances, the application of the rule that a bequest lapses upon the death of the donee occurring prior to the death of the testator by providing that in such contingency, the heirs or issue of the deceased donee shall take in the absence of testator's intention to the contrary. An important question presented in several cases concerns the application of such a statute in a case involving wills which are reciprocal in their bequests. The question ordinarily arises where the wills are those of husband and wife and one of the spouses has died leaving his entire estate to the other. The question is whether upon the death of the latter, the heirs of the former will take the entire estate under the statute as the heirs of a donee whose death has preceded that of the testator. According to some authorities, mutual wills, that is to say wills executed pursuant to an agreement or compact between the testators by which each testator bequeathed his property to the other, making no provision for a third person either absolute or conditioned upon the death of both testators in a common disaster, constitute in effect a single will, being the will of the first to die, and has no existence as the will of the surviving testator. In other words, the rights of the one

testator in the estate of the other are made to depend solely upon his or her surviving the other. The property of the first testator to die passes to the surviving testator and upon the death of the latter without having executed a second will in the meantime, the property passes to his or her heirs as intestate property. The view is that an antilapse statute raising the presumption that a testator intends his bequest to go to the heirs of the devisee in case the devisee predeceases him, in the absence of a contrary intent shown in the will, does not apply so as to permit the heirs of the testator who died first to take under the will of the testator whose death occurred later, since there is in reality no will to which the statute can apply. To say that it was intended by a contract for wills that the agreement was to bind the survivor by his own will so as to permit his estate to pass to the heirs at law and distributees of the first to die, to the exclusion of his own next of kin, is to reach a result which is unnatural and unreasonable. Also, it is said that an absolute bequest with unrestrained power of alienation is repugnant to the notion that the survivor is under a contractual obligation to keep his property intact and his will unrevoked so that it will pass by virtue of the contract to the heirs at law and distributees of the deceased testator. Likewise, a joint will which is strictly reciprocal, in that each testator makes the other the sole beneficiary, has been held to be the will of the one dying first, and not admissible to probate as the will of the survivor on his death.

"That a propounded instrument, being one of two wills in which each testator bequeathed his property to the other, the wills containing no provision for a third person, had no further existence as the will of the surviving testator after the death of the other, may be asserted as a ground of contest. A statutory provision which directs the methods of revocation of a will and is exclusive of

other means of revocation does not change the rule so as to permit the will of the surviving testator to stand for the benefit of the heirs of the first testator, since the surviving testator had no will to revoke following the death of the other testator.

"The question whether wills were executed for the sole purpose of having the surviving testator be the sole beneficiary of the testator dying first is essentially one of construction. Such question is to be determined in the light of the provisions of the wills, the circumstances under which the wills were drafted, signed, and attested, and the knowledge of the contents thereof possessed by both testators. The rule that extrinsic circumstances are not to be considered in construing a will which is unambiguous does not preclude the inquiry whether one of two separate wills remains in force after the death of the testator under the other will. Extrinsic evidence is admissible to show that the wills of husband and wife, although in separate and distinct instruments, were by agreement between the testators to be reciprocal in their provisions. In such instance, the extrinsic proof tends not to destroy or nullify the will of a deceased person or to change or vary its terms, but rather to designate and identify the entire instrument." (Footnotes omitted).

The same subject is treated in 79 Am. Jur. 2d, *Wills*, § 816 (1975), which cites cases from the same jurisdictions. For a discussion of the cases generally involving anti-lapse statutes, see Anno., 92 A.L.R. 847 (1934), and the supplementing discussion in Anno., 63 A.L.R. 2d 1173 (1959). In the former the text says, at 847:

"While it is generally admitted that the rule laid down in these statutes is preferable to the old common-law rule, it is universally recognized that it is not an absolute rule, but only a rule of construction. As in all cases involving the meaning

and effect of wills, the intention of the testator is the all-important consideration; and statutes for the prevention of lapses, like all other laws governing the construction of wills, must give way when opposed to this intention."

The holdings in the cases decided by the courts of Iowa, West Virginia, and Tennessee seem to stand alone in the country as the authority for what is said in 57 Am. Jur., *Wills*, § 737 (1948), and in 79 Am. Jur. 2d, *Wills*, § 816 (1975). We shall examine those cases.[3]

In *Anderson v. Anderson*, 164 N. W. 1042 (Iowa 1917), a husband and wife had executed wills, which the court described as mutual and reciprocal. Each left everything to the other, and made no other disposition. The court held that the wills were the result of a reciprocal agreement or understanding, and were to be treated together as a single will, its purpose served upon the death of the first, so that the surviving wife died intestate. It held that Iowa's anti-lapse statute did not apply because, legally, the wife left no will. The court said, at 1045:

"In other words, the husband's rights in the estate of his wife were by the will made to depend solely upon his surviving her. He did not survive her, and the will she had made in his favor, conditioned upon his outliving her, can never be made effective for any purpose at the demand of his heirs."

In *Maurer v. Johansson*, 274 N. W. 99 (Iowa 1937), the same court had before it a similar case. A husband and wife each executed in 1910 a will leaving everything to the other, and making no other disposition. The wife died in 1933, and the husband took, under her bequest to him. The husband

---

**3.** Another decision cited is Re Blankemeyer's Will, 123 N. E. 856 (N.Y. 1919). The report consists of a Per Curiam order by the Court of Appeals, affirming an order of the Appellate Division, affirming a surrogate's ruling that by the prior death of a legatee, a legacy to him lapsed, when the legatee and the testatrix had made wills by which each left everything to the other. The report did not say whether the wills contained words making survivorship a condition, or whether New York had an anti-lapse statute, and if it did, why it did not apply.

died in 1935, and the wife's heirs claimed, by operation of his will and the anti-lapse statute. Citing *Anderson v. Anderson, supra,* the court held, at 101:

"Mutual wills are those which are executed pursuant to an agreement or compact between two or more persons to dispose of their property in a particular manner, each in consideration of the other. Such wills, if they contain no provisions for third persons, constitute a single will and is the will of the first to die, and has no further existence as the will of the survivor."

The court discussed the argument made to it by the appellants in that case that the evidence was not sufficient to show that the wills were mutual or to establish a contract or agreement between the testators. On this question the court listed several cases cited by the appellants in that case and said that those cases involved only differences in the quantum of proof required by the courts to establish a prior compact for mutual wills. It went on to say that under Iowa law the wills themselves, and the circumstances of their being drawn at substantially the same time, with the knowledge of both testators, are sufficient to establish that there was a contract. The court rejected the argument that a will may be revoked only in the manner provided by statute, and the argument that the anti-lapse statute applied, by saying that there was only one will, and that it had no existence as the will of the husband after the wife's death.

The Supreme Court of Iowa followed *Anderson v. Anderson, supra,* and *Maurer v. Johansson, supra,* in *Maloney v. Rose,* 277 N. W. 572 (Iowa 1938). It seems clear that under Iowa law mutual wills by definition include as an element that they were executed pursuant to an agreement, or compact between the testators.

The Supreme Court of Appeals of West Virginia, relying primarily upon *Anderson v. Anderson, supra,* reached the same result in *Wilson v. Starbuck,* 182 S. E. 539 (W. Va. 1935). In that case a husband and wife had executed identical wills at the same time and place before the same

witnesses. The wills had been prepared by the same lawyer. Each left everything to the other, and made no other disposition. The court held that the wills and the circumstances proved that the wills were entered into pursuant to a contractual relationship between the testators. After quoting from *Anderson v. Anderson, supra,* the court said, at 542:

"To begin with, it is perfectly apparent that the main purpose of both testators is to vest his estate in the survivor. To say it was intended that then the contract was to bind the survivor by his own will to permit his estate to pass to the heirs at law and distributees of the first to die, to the exclusion of his own next of kin, we think reaches an unnatural result."

The court concluded

"that the two wills being in all respects tantamount to a joint will, the purpose of which is to vest the estate of the first to die in the survivor, without limitation over, that the death of Amanda V. Cales rendered the will of the survivor, Peter Cales, inoperative."

In *In Re Reed's Estate,* 26 S.E.2d 222 (W. Va. 1943), the court followed *Wilson v. Starbuck, supra,* saying that the sole purpose of such wills was that the property go to the survivor. When that purpose was accomplished, the court said, the will of the survivor, being contractual, mutual, and reciprocal, was no longer operative.

In the case of *In Re Estate of Bright,* 482 S.W.2d 555 (Tenn. 1972), a husband and wife had executed identical wills in 1955 at the same time and place, before the same witnesses. Each left his estate to the other, and made no other disposition. The husband survived the wife by about two weeks. The court referred to the wills as mutual and reciprocal, and held that there was a presumption in such cases that the testators executed their wills in accordance with their mutual contract to dispose of their property in

this manner. For that reason the will of the first to die became the only will of the parties.

The court relied upon several Tennessee decisions as to the degree of proof necessary to establish the fact of a compact or agreement, but for the legal consequence of a contract so presumed or inferred, this 1972 Tennessee decision relied exclusively upon the 1937 Iowa decision in *Maurer v. Johansson, supra,* the 1935 West Virginia decision in *Wilson v. Starbuck, supra,* and the text of 57 Am. Jur., *Wills,* § 737 (1948).

Upon the authority of *In Re Estate of Bright, supra,* the Court of Appeals of Tennessee held in *Johnson v. Creasman,* 495 S.W.2d 203 (Ct. of App. Tenn. 1972), that the wills of a husband and wife were mutual by agreement, and that the testators intended that only the will of the first to die take effect, and that the survivor died intestate.

We are satisfied from the briefs and from our own research that there have been no reported cases in any other jurisdictions which employ the same rationale to hold, in similar factual situations, that upon the death of the first of the two testators, the will of the survivor becomes inoperative, or ceases to have any valid legal existence as a will. We hasten to add that we are equally satisfied that there is no reported case in which that rationale has been considered and rejected. Certainly the point has not been considered or decided in Maryland.

The decisions of the courts of our sister states are entitled to the highest respect. They are persuasive, but not binding, authority for the legal principles upon which their holdings rest. Differences sometimes arise because of local statutes or precedents. Sometimes the process of reasoning employed does not, upon analysis, carry the conviction of soundness.

We have carefully and deliberately considered the facts and the reasoning in all of the cases and texts which we have reviewed above. We are not persuaded that in the case before us we should hold that the will of Dora E. Dukes became inoperative, and had no valid legal existence as a will, upon the prior death of Hunter P. Dukes.

If the existence of a contract or compact between the

testators is the key to finding that two wills are but a single will, we believe that the cases have found too readily and too easily that the testators entered into a contract. In each case it was apparent that the testators shared a common intent. In none of the cases was there any evidence of an actual contract. If either of the testators entertained the slightest thought that to carry out their intent, it would become necessary to establish judicially that they had entered into a contract, it could hardly be doubted that they would have written a contract.

Another difficulty in following the reasoning of the cases is that although the courts found in each case that the testators acted pursuant to a contract, agreement or compact, the court in none of the cases found or expressed what the contract was, unless it was merely to sign the will. It was not a contract not to revoke, because in some of the cases the court commented that either testator could revoke while both were alive, and that the survivor could make a new will after the death of the first.

Of course, a contract to *make* a will is of fleeting value if the testator can make a different will the next day. It is an actual or alleged contract *not to revoke* which has significance, and which generates much of the litigation involving wills. *Moats v. Estate of Pumphrey*, 33 Md. App. 9, 363 A. 2d 589 (1976) involved an alleged contract not to revoke. In *Moats*, Judge Marvin H. Smith, of the Court of Appeals, Specially Assigned, quoted several text writers on the subject of contracts to make wills. We quote briefly from two of them. In B. Sparks, *Contracts to Make Wills* (1956) the author says at 27-28:

> "When two people execute a common document as the will of each of them or when they execute separate documents at approximately the same time and in identical or almost identical language there is a tendency to pass too easily to the conclusion that such action must have been the result of a contract.
>
> "The clear weight of authority, and certainly the sounder view, is that the mere presence of either

joint or mutual wills does not raise any presumption that they were executed in pursuance of a contract. Nor is this rule altered by evidence that the parties had 'agreed' to the making of such wills. Of course they had so agreed. The mere presence of such wills reveals that the parties must have talked the matter over and must have arrived at an understanding or agreement concerning their testamentary dispositions. Such discussions and such understandings between persons of close affinities, especially between husbands and wives, are not unusual and the fact that they have taken place is no indication that there has been any thought of a binding contract."

In Bowe-Parker: *Page on Wills*, § 11.1 (1960) it is said, at 554:

"The fact that joint wills and mutual wills are usually executed as the result of a common intention does not in any way mean that they are always executed pursuant to a contract between the parties respecting the making of such wills. Though it is true that in many cases the joint will or the mutual wills are made as the result of a contract to make reciprocal wills, there are undoubtedly an equal number of cases in which the common intention does not proceed anywhere near to the point where arms length promises are exchanged, consideration exists, and a contract emerges. It is more logical to expect that in many settings, particularly · that of husband and wife, the reciprocity or similarity in the dispositive provisions of the two wills results from similar tastes and affections that have resulted from years of living together, and the making of identical or similar wills was a spontaneous thing unaccompanied by even so much as a thought on the part of either husband or wife that they should enter into a contract with each other. The sole fact, standing alone, that two wills were executed at or

near the same time and bear similar provisions should in no way give rise to a presumption or an inference that they were made pursuant to a contract."

We are inclined to feel that in the cases relied upon by the appellants here the courts of Iowa, West Virginia, and Tennessee indulged in a legal fiction to find the existence of a contract, of undefined terms, in order to establish a base for finding an intent, undoubtedly reasonable and logical, but nevertheless an intent which the testator did not express. We cannot indulge in that legal fiction.

A more logical rationale, and the basis of the second aspect of the argument of the appellants here, is found in 57 Am. Jur., *Wills*, § 737 (1948). In concluding § 737 that work states:

"In theory it is not essential to the defeat of the operation of an antilapse statute that the wills which are strictly reciprocal in their bequests should have been executed pursuant to a contract between the testators. The presence or absence of a contract specifically enforceable is unimportant in this situation except to the extent that it indicates an intention of the testator that his will is to be operative only on condition that he predecease the other testator. An implied condition of survivorship may be established where the evidence does not warrant a finding of a contract between the testators. The view has been taken, however, that the rule that reciprocal wills constitute a single will which is in all essential respects the will of the first to die applies only where the wills were made pursuant to a contract between the testators for the making of wills with dispositions strictly reciprocal."

To apply the reasoning we have just quoted would require that we find that it was the intention of Dora Dukes that her will was to be operative only on condition that she predecease her husband. Dora expressed no such intent. We

can find nothing in her will, nor in the circumstances surrounding the execution of it, that even suggests that she ever formed such an intent. If we were to find that Dora did form that intent, then, because the wills and the circumstances were the same, we would find that Hunter formed a similar intent.

Upon that premise we would also be saying that each testator, by the very act of making his will, intended, if he survived the other, to die intestate. Even more would flow from such a finding of intent. Knowing that the survivor's heirs would "beat the anti-lapse statute", and knowing the certainty of death, and the uncertainty of the time thereof, each one of the two testators would be betting in favor of his own heirs that he would die first.

The order of death of Dora and Hunter Dukes could easily have been the reverse of what it was. To say that in 1948 each of them formed an intent which would be either fulfilled or frustrated by totally unpredictable future events borders on the ridiculous. Their judgment surely was not the best. They used, presumably without legal advice, what appear to be home-typed forms, probably passed along by a friend. We must assume that they understood what the wills said. We cannot assume that they understood anything more.

We consider it to be inescapable that neither Hunter nor Dora gave any thought whatever to what would happen to their property on the death of the survivor. As far as we can tell, the thought never entered their minds. The intent for which we look simply did not exist.

On the question of intent, the case of *Vance v. Johnson,* 171 Md. 435, 188 A. 805 (1937), is persuasive if not controlling. A husband and wife, each married for the second time, made wills by which each left everything to the other and made no further disposition. The husband had three children by his first marriage. The wife had no children. In the clause by which he devised and bequeathed all of his estate to his second wife, the husband expressed his full faith and confidence in the wisdom and judgment of his wife. He said that he knew that in case the need should arise,

she would fairly and justly see to the welfare of his three children. The wife died in 1921. The husband died in 1934, leaving the 1918 will.

The lower court applied the anti-lapse statute, and ruled that the wife's first cousins, her heirs, took under the husband's will. The Court of Appeals affirmed. It said, at 440:

> "Appellants' criticism of that decree is based upon the contention that the intent of the testator, as shown by his will and surrounding circumstances, was that the devise and bequest to Jennie Robb Savin were to become effective only in the event that she survived her husband, and, since she did not survive him, section 335 of article 93 of the Code is inapplicable and Savin therefore died intestate. But that argument is based upon the language used by the testator in his will, in which he expressed confidence that, should the need arise, his wife would 'fairly and justly see to the welfare' of his three children, and the reasoning that the testator could not possibly have desired or intended such wishes to be carried out by some of her relatives who were unknown to him and in whom he could not have had faith and confidence.

> "Since it rarely happens that the phraseology of any two wills is similar, decisions holding that bequests and devises were or were not intended to take effect, if the person to whom they were made predeceased the testator, are of little aid to guide us in ascertaining testator's intent in the present case, and in the final analysis this must be determined from the context of the will and surrounding circumstances, but, as this court said in *Vogel v. Turnt*, 110 Md. 192, 197, 72 A. 661, 662: 'It must be conceded that, when a testator manifests an intention that the beneficiary named by him shall take, and not those who would otherwise take by virtue of such a statute as ours, the statute will not control.' "

The Court said further, at 441:

> "The argument that he would not desire the relatives of the wife to take his entire estate to the exclusion of his children cannot control, unless supported by the language of the will, which he is presumed to have made in view of the statute. It is also presumed that he intended the statute (section 335, article 93 of the Code) to apply, and the burden of showing an intent to the contrary is upon those who assert it."

In that case the Court of Appeals found no support in the language of the will for the argument that the testator did not intend that the relatives of his wife take his entire estate. We find even less support in the case before us for the argument that Dora Dukes intended that the anti-lapse statute should not apply. We hold that the statute does apply, and presumes an intent which fills a void left by the testator. The statute expands the bequest in Dora's will so that in effect it reads, "I give to my husband, Hunter P. Dukes, [or, if he does not survive me, to those persons who would be his heirs at the time of my death,] all property of whatsoever kind and nature, whether real or personal, of which I may die possessed." Dora did not die intestate. The heirs of Hunter take under her will.

*Order affirmed.*
*Appellants to pay costs.*