MARY PERSSON ᴇᴛ ᴀʟ. *v.* THOMAS J. DUKES, Pᴇʀs. Rᴇᴘ. ᴏꜰ Esᴛᴀᴛᴇ ᴏꜰ Dᴏʀᴀ E. Dᴜᴋᴇs

[No. 129, September Term, 1976.]

*Decided April 26, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Phillip L. Felts*, with whom were *Ronald G. Kane* and *Schuman & Kane Chartered* on the brief, for appellants.

*Maurice C. Lewis* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Hunter P. Dukes and Dora E. Dukes, his wife, died domiciled in Dorchester County, Maryland on 19 August 1974, as a result of injuries sustained in an automobile accident. Mr. Dukes died at 12:45 p.m.; Mrs. Dukes, at 2:35 p.m. On 6 March 1948, they had executed reciprocal wills.[1]

---

1. Mr. Dukes' will provided:

"I, Hunter P Dukes, of the City of Washington D.C., do make, publish and declare this to be my last will and testament.

Thomas J. Dukes qualified as the personal representative of the estates of Mr. and Mrs. Dukes in the Orphans' Court for Dorchester County. Because Mr. and Mrs. Dukes died without issue, the personal representative of Mrs. Dukes' estate instituted a declaratory action in the Circuit Court for Dorchester County for a determination of the persons properly entitled to take under her will.

From a decree of that court declaring that the persons entitled to the distribution of the estate of Mrs. Dukes were the heirs of Mr. Dukes, the next of kin of Mrs. Dukes appealed to the Court of Special Appeals, which affirmed the decree in *Persson v. Dukes*, 33 Md. App. 214, 364 A. 2d 86 (1976). We granted certiorari in order that we might review the questions:

1. Did the courts below err by failing to hold that the wills of Dora and Hunter Dukes were mutual and reciprocal wills, executed pursuant to an agreement between the testators and under such circumstances as to constitute in effect, a single will, being the will of the first to die and rendering inoperative the will of the survivor?

2. Does Mrs. Dukes' will and the surrounding circumstances at the time and place of its execution together with the natural and reasonable inferences drawn therefrom state an intent by Mrs. Dukes that the legacy to her deceased husband should lapse?

We regard these contentions as being so intertwined that they may well be considered together. It should be noted at the outset that

"A *joint will* is a single testamentary instrument which contains the wills of two or more persons, is

---

"I give to my wife, Dora Dukes, all property of whatsoever kind and nature, whether real or personal, of which I may die possessed. I hereby appoint my said wife as executor without bond, and with full power to sell, convey, rent, mortgage, transfer and assign any or all of my said property upon such terms and conditions as she may deem to be in the best interests of my estate."

Mrs. Dukes' will was identical, except that she named her husband as beneficiary and executor. Neither will contained a substitutional bequest in the event of the death of the named beneficiary.

executed jointly by them, and disposes of property owned jointly, in common, or severally by them. A *mutual will* is one executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other. If the testators name each other as beneficiaries, the wills are *reciprocal.*" Vaughn, *The Joint and Mutual Will*, 16 Bay. L. Rev. 167 (1964) (emphasis added).

While there are a few states which have held that reciprocal wills, containing no provisions for third persons, are to be regarded as having been mutual wills, executed pursuant to an agreement or compact, thus making the will of the survivor inoperative upon the death of the first to die, *Maurer v. Johansson*, 223 Iowa 1102, 274 N. W. 99 (1937); *Anderson v. Anderson*, 181 Iowa 578, 164 N. W. 1042 (1917); *In re Estate of Bright*, 482 S.W.2d 555 (Tenn. 1972); *Wilson v. Starbuck*, 116 W. Va. 554, 182 S. E. 539 (1935), they do so in reliance on the notion that a compact or agreement can be inferred when wills containing the same provisions are executed at or about the same time.

The majority view is to the contrary, however:

"The fact that joint wills and mutual wills are usually executed as the result of a common intention does not in any way mean that they are always executed pursuant to a contract between the parties respecting the making of such wills. Though it is true that in many cases the joint will or the mutual wills are made as the result of a contract to make reciprocal wills, there are undoubtedly an equal number of cases in which the common intention does not proceed anywhere near to the point where arms length promises are exchanged, consideration exists, and a contract emerges. It is more logical to expect that in many settings, particularly that of husband and wife, the reciprocity or similarity in the dispositive provisions of the two wills results from similar

tastes and affections that have resulted from years of living together, and the making of identical or similar wills was a spontaneous thing un-accompanied by even so much as a thought on the part of either husband or wife that they should enter into a contract with each other. The sole fact, standing alone, that two wills were executed at or near the same time and bear similar provisions should in no way give rise to a presumption or an inference that they were made pursuant to a contract." 1 Bowe-Parker, Page on Wills § 11.1 at 554 (1960) (citing cases).

*See* 79 Am.Jur.2d *Wills* § 816, at 870-71 (1975).

We agree with the conclusion reached by the Court of Special Appeals in a careful opinion written by Powers, J. that it is inappropriate to rely on such a fiction in view of the thrust of our lapsed legacy statute,[2] Maryland Code (1957, 1964 Repl. Vol.) Art. 93, § 354:

"No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." [3]

---

**2.** Maryland has had a lapsed legacy statute since the enactment of Chapter 34 of the Laws of 1810.

**3.** Substantial changes in this provision were made by Chapter 3, § 1 of the Laws of 1969 (our new Decedents' Estate Law). The revised section, Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 4-403 is applicable only to wills executed after 1 January 1970, Stewart v. Whitehurst, 268 Md. 589, 303 A. 2d 393 (1973). The revised section now appears in Code (1974), Estates and Trusts Article § 4-403. *See also* § 4-401 of the same Article which provides that a legatee, other than a spouse, who fails to survive the

Moreover, the death of Mr. Dukes survived by Mrs. Dukes cannot have effected a revocation of her will. *See* Code (1974), Estates and Trusts Article § 4-105 which delineates the manner in which a will may be revoked.

We recently construed the statute in *Stewart v. Whitehurst,* 268 Md. 589, 303 A. 2d 393 (1973). There, we said at 592 of 268 Md., 394 of 303 A. 2d:

> "In consequence, the provision made by Robert [Stewart, who survived his wife] for Suzette [his wife, who predeceased him] passed directly to Suzette's next of kin living at the time of Robert's death, in such proportions as they would have received had she survived Robert and died intestate, *Simon v. Safe Deposit & Trust Co.,* 190 Md. 468, 59 A. 2d 199 (1948); Sykes, *Probate Law and Practice* §§ 131-134 [at 130-36] (1956)."

*See also Vance v. Johnson,* 171 Md. 435, 188 A. 805 (1937); *Vogel v. Turnt,* 110 Md. 192, 202, 72 A. 661, 664 (1909); *Glenn v. Belt,* 7 G. & J. 362 (1835); Mullen, *The Maryland Statute Relating to Lapsing of Testamentary Gifts,* 7 Md. L. Rev. 101 (1943).

Finally, while Mr. and Mrs. Dukes were residents of the District of Columbia at the time they executed their wills, it is conceded that they were domiciled in Dorchester County, Maryland, at the time of their deaths. Our cases have long held that the lex domicilii governs the devolution of personalty, *Harding v. Schapiro,* 120 Md. 541, 87 A. 951 (1913); including the lapse of a legacy, *Lowndes v. Cooch,* 87 Md. 478, 39 A. 1045 (1898), in the absence of a specific statement or a definite implication to the contrary, *Smith v. Mercantile Trust Co.,* 199 Md. 264, 86 A. 2d 504 (1952); E. Miller, Jr., The Construction of Wills in Maryland § 3, at 10

testator by 30 days, is considered to have predeceased the testator absent an expression of contrary intention, as well as §§ 10-801 — 10-806 of the Courts and Judicial Proceedings Article, the Uniform Simultaneous Death Act. Section 4-401 is not applicable because of the spousal relationship; §§ 10-801 — 10-806 are inapplicable because there was evidence that the deaths occurred other than simultaneously.

(1927); 6 Page on Wills, *supra*, § 60.9, at 462-65, § 60.10, at 465-66; 16 Am.Jur.2d, *Conflict of Laws* § 67, at 103-04 (1964). There is no evidence of a contrary intention here. The courts below quite properly concluded that by reason of the lapsed legacy statute, Mrs. Dukes' estate passed to those persons who were Mr. Dukes' next of kin at the time of her death as if he had died intestate.

> *Judgment of Court of Special Appeals affirmed; costs to be paid by appellants.*