PAUL MURRAY ET AL. *v.* FRANCIS M. WILLETT, JR., PERSONAL REPRESENTATIVE OF THE ESTATE OF EDWARD A. MURRAY

[No. 1190, September Term, 1976.]

*Decided June 14, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and MELVIN, JJ.

*Bruce N. Goldberg* for appellants.

*Fred Warren Bennett*, with whom were *Stephen K. Carper* and *Goldstein, Ahalt & Bennett, Chartered* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

A fundamental ingrained principle of the testamentary law of Maryland is that when a will contains a residuary clause, the courts will employ every intendment against general or partial intestacy. *Crawford v. Crawford*, 266 Md. 711, 296 A. 2d 388 (1972); *McElroy v. Mercantile-Safe Deposit and Trust Co.*, 229 Md. 276, 182 A. 2d 775 (1962); *Ball v. Townsend*, 145 Md. 589, 125 A. 758 (1924); *Holmes v. Mackenzie*, 118 Md. 210, 84 A. 340 (1912); *Lavender v. Rosenheim*, 110 Md. 150, 72 A. 669 (1909); *Dulany v. Middleton*, 72 Md. 67, 19 A. 146 (1890); *Barnum v. Barnum*, 42 Md. 251 (1875).

In this appeal from a decree of the Circuit Court for Montgomery County (Frosh, J.), construing the Last Will and Testament of Edward A. Murray, the appellants, Paul Murray et al.,[1] recognize the cardinal rule but assert its non-application to this particular case.

When the testator made his will on August 30, 1964, by completing a printed form, his four brothers were all dead. One died in infancy, one in his teens, and the other two, Thomas F. Murray and Stephen J. Murray, Sr., the fathers of the appellants, passed away in 1957 and 1941,

---

1. Paul Murray, the son of a deceased brother of the testator, is joined in this appeal by his sisters, Rachel O'Hara, Mary Greiser, and Susan Murray. Stephen Murray, Anne Searcy, and John Murray, children of another deceased brother, are also joined as appellants.

respectively. At the time of the execution of his will, the testator had two living sisters, Mary M. Willett, the mother of the testator's personal representative, the appellee in this case, and Isabel M. Sweeney, the mother of Edward A. Sweeney.

After a formal recital and the revocation of "all other and former Wills," the testator provided:

> "First, after my lawful debts are paid, I give devise and bequeath in equal shares all of my estate of whatsoever nature and wherever situated to my belove [sic] sister, Isabel and Mary. In the event of the prior decease of Isabel, her share is to go to Mary. In the event of the prior decease Mary, her share isto [sic] go Iasber [sic]."

Mary died in June 1971, leaving Francis M. Willett, Jr., as her only heir. Isabel died in 1973, leaving Edward Sweeney as her only heir. Murray is, of course, survived also by other nephews and nieces who constitute the appellants.

Following the filing of the "Bill of Complaint for the Construction of Will," two groups of heirs answered. Francis Willett, Jr., in his individual capacity, as distinguished from his being the Personal Representative of Edward Murray, and Sweeney asserted that they should divide the estate, or, in the alternative, it should all devolve upon Sweeney. The other group, consisting of the appellants, contended that the Will is so vague and ambiguous that it is inoperative, and, therefore, the estate should pass by way of distribution under the intestacy law. Md. Est. & Trusts Code Ann. § 3-104 (b).

We agree with Judge Frosh that the clause of the will upon which the appellants focus their attack is clearly a residuary clause, defined in *Black's Law Dictionary* 1473 (4th ed. 1968) as that "[c]lause in will by which that part of property is disposed of which remains after satisfying bequests and devises." The particular clause in the case *sub judice* is lacking any unmistakable verbiage such as "all the rest and residue of my estate" or "the residue of my estate" or "the balance of my estate," but there is no requirement

that those stylistic forms be utilized. In this State, "[n]o particular form of expression is required to constitute a residuary clause, it being sufficient if the intent to dispose of the residue appears." *McElroy v. Mercantile-Safe Deposit and Trust Co., supra* at 284, 182 A. 2d at 779.

The difficulty with the clause in the instant case is occasioned by the phrase "of the prior decease." Those words give rise to two distinct inferences. The phrase could be argued to mean, first, that each sister must survive the other in order to take under the will, or, second, that each sister must survive the testator before she may take under the will.

Had the testator been cognizant of and heeded the message in the "Minutes and Advices of the Yearly Meeting of Friends Held in London" (1802), that

> "[f]riends are earnestly recommended to employ persons skilful in law, and of good repute, to make their wills; as great inconvenience and loss, and sometimes the ruin of families, have happened through the unskilfulness of some who have taken upon them[selves] to make wills . . .",

it is likely that this litigation would never have arisen.

Bearing in mind that courts abhor intestacy,[2] *Crawford v. Crawford, supra; McElroy v. Mercantile-Safe Deposit and Trust Co., supra; Ball v. Townsend, supra; Holmes v. Mackenzie, supra; Lavender v. Rosenheim, supra; Dulany v. Middleton, supra*; and *Barnum v. Barnum, supra,* we begin with the premise that the testator did not go to the trouble of writing a will in solemn form so as to create the solemn farce. It is obvious that having made the will he did not intend to die intestate. *In re Harrison,* 30 Ch. D. 390, 393-94 (1885).

---

2. Even at common law the courts were reluctant, in the face of a will, to declare intestacy. According to 2 Blackstone, *Commentaries on the Laws of England* 514 (Lewis ed. 1902), "[w]hen all the debts and particular legacies are discharged, the surplus, or *residuum*, must be paid to the residuary legatee, if any be appointed by the will; and if there be none, it was long a settled notion that it devolved to the executor's own use, by virtue of his executorship."

The precise question posed by this appeal, *i.e.*, the disposition of the residuary estate when all of the residuary legatees have predeceased the testator,[3] does not appear to have been heretofore addressed in Maryland appellate opinions.

We believe this case to be controlled by Md. Est. & Trusts Code Ann. § 4-403, which provides in pertinent part:

> "(a) *Death of legatee prior to testator.* — Unless a contrary intent is expressly indicated in the will, a legacy may not lapse or fail because of the death of a legatee after the execution of the will but prior to the death of the testator if the legatee is:
>
> (1) Actually and specifically named as legatee;
>
> (2) Described or in any manner referred to, designated, or identified as legatee in the will; or
>
> (3) A member of a class in whose favor a legacy is made.
>
> (b) *Effect of death of legatee.* — A legacy described in subsection (a) shall have the same effect and operation in law to direct the distribution of the property directly from the estate of the person who owned the property to those persons who would have taken the property if the legatee had died, testate or intestate, owning the property."

As we view the will in the case now before us, there is no "expressed" or "indicated" intent therein to demonstrate that the testator was desirous of having his estate, or any portion thereof, pass by way of intestacy. The clause can only reasonably be interpreted, therefore, to mean that Murray devised his estate to his two sisters, Mary and Isabel, in equal shares with the proviso that if either sister was not alive at his death, then the surviving sister would inherit the whole of the estate. Because both sisters predeceased Murray, it is safe to infer, in the light of the anti-lapse statute, § 4-403, that Murray intended for the

---

3. The testator died in 1975.

children of Mary and Isabel to take by way of representation the share that the child's mother would have taken had she survived Murray.

If Maryland did not have the anti-lapse provision in its statutory law, the appellants' position would be on much sounder footing. The difficulty appellants encounter, and are unable to overcome, is the fact that we do have such a statute. The out-of-state cases upon which appellants rely pale into insignificance in the face of § 4-403. *See generally Persson v. Dukes*, 280 Md. 194, 372 A. 2d 240 (1977), *aff'd* 33 Md. App. 214, 364 A. 2d 86 (1976); *Stewart v. Whitehurst*, 268 Md. 589, 303 A. 2d 393 (1973).

We think that the trial judge properly and correctly applied the Maryland law to the case at bar. He did not, as appellants allege, "shoot from the hip," but even if he did do so his marksmanship was uncanny because he struck the bull's eye.[4]

> *Judgment affirmed.*
> *Costs to be paid by appellants.*

---

4. In so holding, we "anticipate with satisfaction that henceforth the group of ghosts of dissatisfied testators who, according to a late Chancery judge, wait on the other bank of the Styx, to receive the judicial personages who have misconstrued their wills, may be ... diminished ..." by one. Perrin v. Morgan, 1 All E.R. 187, 194-95 (1943).