(Decided 3rd June, 1875.)

---

ELIZABETH B. ADAMS, and others *vs.* JOHN H. MORROW.

### *Construction of a Will.*

A testator devised property to one of his children by the following description: "The lot of ground on York street, about sixty-two feet front, with a depth of about sixty feet, heretofore used by me as a lumber yard, and for storage, together with the old building standing thereon, and all the lumber and material now stored there." A part of the property belonging to the testator, fronting on York street, forty-eight feet, and running through to Hill street, a hundred and fifty-three feet, had been conveyed to him in fee in the year 1851; the other portion being leasehold, and fronting on York street, twenty-one feet six inches, with a depth of seventy-eight feet, was acquired by him in the year 1863. The first lot was used by the testator as his lumber yard entirely through to Hill street, until the Hill street front

with a depth of ninety feet, was leased to the City for a public school, leaving a front of forty-eight feet on York street, with a depth of sixty-three feet. After acquiring the leasehold lot, with an old building thereon, that part of it not covered by the building, was also used in connection with the other as a lumber yard. The testator erected two brick dwellings on the lot he first purchased, fronting together on York street some twenty-four feet; and the residue of this lot, together with all the leasehold lot not occupied by the old building, he used as a lumber yard at the time he made his will. The entire frontage of both lots on York street, including the two new houses, was sixty-nine feet six inches, and excluding them, was forty-five feet six inches, the depth of the fee-simple portion being sixty-three feet, and of the leasehold portion seventy-eight feet. HELD :

That under said clause of the will the devisee was entitled to the entire lot on York street, including the part occupied by the two new houses.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, ALVEY and ROBINSON, J.

*Frederick T. Baker* and *John M. Carter*, for the appellants.

In considering the language of the devise—what effect is to be given to the words, " *about* sixty-two feet front, with a depth of *about* sixty feet " ?

It is clear, that because of their uncertainty they cannot control the intent of the testator, otherwise apparent from the context of the devise. The will was executed a short time before the testator's death. He left a large estate, including many houses and lots of ground. He had no deeds or plats before him at the time, nor did he profess to be accurate in describing the lots. In each instance he failed to give correct numbers of feet. It would be impossible to gratify the description without dividing a building. *Redfield on Law of Wills, Part 1st,* 426, *7th Rule ;*

2 *Roper on Legacies*, 1329; *Douglas vs. Blackford*, 7 *Md.*, 8; *Taylor vs. Watson*, 35 *Md.*, 519.

What is to be considered the "lot," "heretofore used by me as a lumber yard and for storage"? Evidently the lot, *as it existed and was used* at the time of the execution of the will, and for more than ten years prior thereto. The leasehold lot on the west of the original lot is to be considered as part of the lumber yard intended to be devised; the word "heretofore," referring not to the original lot, but to the lot as it had been used; the old building, and the *only* building mentioned in the devise, stands upon this part of the lot, and it is upon this part that the ground rent spoken of by the testator exists. Since the erection of the buildings, Nos. 141 and 143 York Street, the only property *available* for a lumber yard and for storage, was the lot so used by the testator for more than ten years.

What is the value of the words, "together with the old building standing thereon"? These words positively identify the leasehold lot as part of the lumber yard "*heretofore used by*" the testator; they indicate the secondary importance of the building; they clearly exclude any intention of the testator to give the appellee two comparatively new houses, and shew that the building mentioned was the only one upon the lumber yard lot as devised.

*John C. King,* for the appellee.

The construction of the Court below conforms more closely to the language of the will than any other construction which could possibly be applied to the property in question. An express and positive devise cannot be controlled by the reasons assigned, or by subsequent ambiguous words, or by inference or argument from other parts of the will. 2 *Jarman on Wills,* 762, &c.; 1 *Redfield on Wills,* 430, 431; *Cole vs. Wade,* 16 *Ves.,* 46; 8 *Bligh, N. S.,* 88.

Where a testator's intention cannot operate to its full extent, it shall take effect as far as possible. *Finch,* 139;

*Thelusson vs. Woodford*, 4 *Vesey*, 325 ; *Southey vs. Lord Somerville*, 13 *Vesey*, 486.

The inconvenience, or absurdity of a devise, is no ground for varying the construction, where the terms are unambiguous, nor is the fact that the testator did not foresee all the consequences of his disposition, a reason for varying it. *Defflis vs. Goldschmidt*, 1 *Mer.*, 417 ; 2 *S. & Stu.*, 295.

The Court cannot possibly adopt any construction of a will which would render the disposition of an estate more indefinite and uncertain than the testator himself has done.

The fact that the testator mentions an old building as standing thereon, could not operate to divest the title of the appellee to any other building embraced within the lines of the devise, and which would necessarily vest in the appellee by act of law. The fact that the old building never was part of the lumber yard, is a very sensible reason why the testator should allude to it, and declare his intention to have it pass under that description. The plain and unambiguous words of the will must prevail, and are not to be controlled or qualified by any conjecture or doubtful construction growing out of the situation, circumstances or condition, either of the testator, his property or family. *Bunner vs. Storm*, 1 *Sandf. Ch.*, 357 ; *Mann vs. Mann*, 14 *Johns.*, 1 ; *Parsons vs. Winslow*, 6 *Mass.*, 175 ; *Daus vs. Swan*, 4 *Mass.*, 208 ; *Redfield on Wills*, 430, 431.

It is not really a case of latent ambiguity, requiring the introduction of parol evidence, for there are no two subjects equally answering the description of the devise. There is in fact but one, and that is distinctly contained in the third item of the will.

Latent ambiguity arises only where the words of the instrument, apparently definite and specific, are susceptible of an application with equal propriety, to two or more different subjects or objects. 1 *Redfield on Wills*, 573–74 *and* 5 ; *Miller vs. Travers*, 8 *Bing.*, 244 ; *Hiscocks vs. Hiscocks*,

5 *M. & W.*, 363; *Price vs. Page*, 4 *Ves.*, 680; *Stell vs. Hoste*, 6 *Madd.*, 192; *Careless vs. Careless*, 19 *Vesey*, 601.

Where the subject intended is certain, and the words apply to but one subject, a superadded description, though false produces no ambiguity. 1 *Redfield on Wills*, 588 *and* 9; *Roman Cath. Orph. Asylum vs. Emmons*, 3 *Brad.*, 144; *Woods vs. Moore*, 4 *Sandf.*, 579; *Jackson vs. Sill*, 11 *Johns.*, 201; *Tucker vs. Seamen's Aid Society*, 7 *Met.*, 188.

Where a false or inapplicable description is annexed to a subject, it is to be rejected. As where a house is named as being in the occupation of a particular person, and he was not in possession, and where part of the premises only are in the occupation of the person named, the whole will pass. *Dorsey's Lessee vs. Hammond*, 1 *H. & J.*, 190; 1 *Redfield on Wills*, 609; *Hammond vs. Ridgely*, 5 *H. & J.*, 245; *Creswell vs. Lawson*, 7 *Gill & John.*, 227.

STEWART, J., delivered the opinion of the Court.

The appeal in this case is from the decree of the Circuit Court of Baltimore City, of the 18th January, and the order of the 12th February, 1875, confirming the allotment under the third clause, in the will of John Morrow, made by the commissioners appointed by the Court for that purpose.

The dispute grows out of the language of the second item in the third clause of the will, devising certain property to his son John, the appellee, in these words, "also, *the lot of ground on York Street, about sixty-two feet front, with a depth of about sixty feet, heretofore used by me as a lumber yard, and for storage, together with the old building standing thereon, and all lumber and material now stored there.*"

Parol testimony was introduced on both sides without exception, and it is agreed, may be considered in the determination of the cause.

To what extent, otherwise, it was admissible, it is of course unnecessary under the agreement to decide, but it can make but little difference in giving a proper construction to the terms used in the will, which must mainly be the guide in the ascertainment of the meaning of the testator, which is the great purpose to be accomplished.

It appears that a part of the property belonging to the testator, fronting on York Street forty-eight feet, and running through to Hill Street, some hundred and fifty-three feet, was conveyed to him by Howard and wife, by deed of 18th December, 1851.

The other part being leasehold, fronting on York Street twenty-one feet six inches, with a depth of seventy-eight feet, was purchased by the testator from Brannan, by assignment, bearing date 1st of July, 1863, subject to an annual rent of $16\frac{12}{100}$ dollars.

The first lot was used by the testator as his lumber yard, entirely through to Hill Street, until that part thereof fronting on Hill Street, with a depth of ninety feet, was leased to the Mayor and City Council of Baltimore, for a public school, leaving a front of forty-eight feet on York Street, with a depth of sixty-three feet.

After the testator acquired the leasehold lot with an old building thereon, that part of it not covered by the building, was also used in connection with the other, as a lumber yard.

The testator erected two brick dwellings on the lot he first purchased, on York Street, fronting together, some twenty-three or twenty-four feet on that street ; and the residue of this lot, together with the leasehold lot, unoccupied by the house, he used as a lumber yard at the time he made his will.

The entire frontage of both lots on York Street, including thereon the old house and the two new ones, was sixty-nine feet six inches.

The testator describes the property devised as the lot of ground on York Street, *about* sixty-two feet front, with a depth of about sixty feet.

He had under his first purchase but forty-eight feet fronting on York Street, and after the lease to the city, with a depth of sixty-three feet; under his second purchase, he had twenty-one feet six inches, fronting on York Street, with a depth of seventy-eight feet.

If the twenty-four feet with the new brick houses be deducted, there would remain of both lots but forty-five feet six inches, of front on York Street.

The entire frontage, so far as that fact can throw any light upon the subject, is much nearer the description furnished by the testator in his will, than its curtailment by the twenty-four feet covered by the brick houses; which would reduce the frontage on York Street to forty-five feet six inches. As the testator does not pretend to be precisely accurate but describes the lot as fronting on *York Street, about sixty-two feet,* it is much the more reasonable construction to extend it to the sixty-nine feet six inches, than to reduce it to the forty-five feet six inches. That is quite obvious.

But the testator further describes it as the lot of ground on York Street, heretofore used by him as a lumber yard. It does not appear that he had any other lot fronting on York Street in that vicinity at least. Without any words to limit the devise so as to exclude that part of the lot covered by the two houses, we do not perceive upon what ground or upon what principle of construction the Court could undertake to except that portion of the lot, simply because the two brick houses will be thereby embraced.

Besides, as the testator describes the lot as *about sixty-two feet* fronting on York Street, its actual front being sixty-nine feet six inches, is not such an unreasonable variance from its true dimensions as to authorize the rejection of the surplus; and to prevent the testator from devis-

ing the whole lot, using sufficient language for that purpose.

There is no rule in the construction of wills forbidding the Court from allowing such reasonable latitude to the description of property, given by the testator, as will carry into effect his purpose.

The main object is to find out from the language of the whole will, and the provisions of the *special* clause in *question*, what was the intention of the testator, which is not to be defeated by mere conjecture or speculation, as to his purposes.

Where he has left sufficient margin by language allowing extension or diminution as to the extent of the property, it would be unreasonable to confine it to any precise number of feet. If sufficient to cover the entire lot with its front of sixty-nine feet six inches, effect must be given to it accordingly, in the absence of any other provision contravening such construction.

It appears that the testator was a man of large property, his real estate amounting to some $64,000—his personal some $82,000—that he left a widow and four children, one son, the appellee, and three daughters. He gave his wife one-third of his personal estate absolutely, and one-third of his real estate during her life. He gave to one of his daughters specifically $500, and to his only son as a special devisee under the third clause of his will, according to the construction placed upon it by the Circuit Court, property valued at $4500.

The residue of his property, including the portion of real estate devised to his wife for life, at her death, was to be held in trust for the use of his four children, and after the death of the last surviving child to be divided amongst his grand-children *per stirpes*, and the trust to cease.

As the appellee, was his only son, and seems to have been an object of his special bounty this devise to him from his large property, is entitled to a liberal construction in his behalf.

It would be a harsh, unjust and unnatural view to take of the testator's purposes, to attribute to him, under the circumstances, regarding the amount of his property and the relations of his children, the intention to mutilate or sub-divide his lot on York Street, and deprive his son of a part thereof, because there were two houses thereon, estimated to be worth together some $2000.

He has made use of language sufficient, by a natural construction, to convey the entire lot on York Street; and if it had been his intention to deprive his son of the two houses, he has failed to make it appear by any words in the will, or any circumstances competent to be taken into consideration, that such was his design.

*Decree and order*
*affirmed.*

(Decided 3rd June, 1875.)