MARIE SIMPSON ET AL. *v.* DOLORES P. PISCANO
ET AL.

[No. 48, September Term, 1979.]

*Decided October 1, 1980.*

The cause was argued before MURPHY, C. J., and SMITH,
DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ., and

reargued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

Argued and reargued by *J. Edward Davis* and *Daniel T. Doherty, Jr.,* with whom were *Steven K. Fedder* and *Weinberg & Green* on the brief for Margaret Hoeck et al., part of appellants, and *Alan Garfinkle* on the brief for Marie Simpson et al., other appellants.

Argued and reargued by *Richard W. Kiefer* and *Dorothy M. Beaman,* with whom were *Hooper, Kiefer & Cornell* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court. ELDRIDGE, COLE and DAVIDSON, JJ., dissent. COLE, J., filed a dissenting opinion at page 567 *infra,* in which ELDRIDGE and DAVIDSON, JJ., join.

We are here involved for the first time in interpreting Maryland's lapsed legacy statute as it was amended as a result of the 1968 report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland, commonly known as the Henderson Commission (the Commission).[1]

Prior to the 1969 revision of the Maryland probate law our former statute, Maryland Code (1957) Art. 93, § 354, stated:

> No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the

---

[1]. Its chairman was the Honorable William L. Henderson, a member of this Court from 1944 to 1964, retiring as its chief judge. The membership included a then member of the Court of Special Appeals, Thomas M. Anderson, Jr.; a then legislator who is now a member of the Court of Special Appeals, Thomas Hunter Lowe; the present Administrative Judge of the Supreme Bench of Baltimore City, Robert L. Karwacki; a number of lawyers who were and are outstanding in the field of probate practice, and such persons of practical experience as Miss Ruth R. Startt, the longtime Register of Wills of Talbot County.

testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator.

The Commission referred to the construction which had been placed upon that section by this Court, stating:

As formerly construed, § 354 (Md.) operated to transfer property directly to the *heirs at law* of the deceased legatee, even though such person might himself have left a will. *See,* [1 P. Sykes, Probate Law and Practice], §§ 131-134 [(1956)]; [Mullen, The Maryland Statute Relating to Lapsing of Testamentary Gifts, 7 Md. Law Rev. 101,] 111-112 [(1943)]. Thus, if A dies after the execution of B's will which leaves property to A, such property would pass to A's heirs at law even though A left a will which would have left the property to other persons. A second aspect of the former statute was that the property was not subject to administration in the estate of the deceased legatee (or to his debts) but passed directly to his heirs. [*Id.* at 54-55 (emphasis in original).]

The General Assembly enacted the new statute, Code (1957, 1969 Repl. Vol.) Art. 93, § 4-403 in the exact words proposed by the Commission. The present statute, a product of code revision, is to the same effect. It is Code (1974) § 4-403, Estates and Trusts Article, which provides:

(a) *Death of legatee prior to testator.* — Unless a contrary intent is expressly indicated in the will, a legacy may not lapse or fail because of the death of a legatee after the execution of the will but prior to the death of the testator if the legatee is:

(1) Actually and specifically named as legatee;

(2) Described or in any manner referred to, designated, or identified as legatee in the will; or

(3) A member of a class in whose favor a legacy is made.

(b) *Effect of death of legatee.* — A legacy described in subsection (a) shall have the same effect and operation in law to direct the distribution of the property directly from the estate of the person who owned the property to those persons who would have taken the property if the legatee had died, testate or intestate, owning the property.

(c) *Creditors of deceased legatee.* — Creditors of the deceased legatee shall have no interest in the property, whether the claim is based on contract, tort, tax obligations, or any other item.

6 W. Bowe and D. Parker, *Page on Wills* § 50.10 (1962) is authority for the fact that statutory provisions to prevent lapse may be divided into three groups. *Id.* at 78. They say, "One group applies only where the beneficiary is the lineal descendant of testator, and, usually, where he dies before testator, leaving lineal descendants. In such a case, the legacy does not lapse; but passes to the descendants of such beneficiary." *Id.* at 78. It is further stated the second group "applies where the beneficiary is a relation of testator, and, usually, where he dies leaving lineal descendants who survive testator." *Id.* at 79. It is obvious that neither the old nor the new Maryland statute falls into either of those groups. Page states, "The statutes of the third group are not limited, by their terms, to gifts to relatives, or to any specified devisees or legatees; but apply to all cases in which the devisee or legatee dies before testator." *Id.* at 80. Neither counsel nor we have found an anti-lapse statute similar to our current law.

In this case Bernard P. Hoenig and Leona P. Hoenig were married on October 11, 1969. On April 10, 1970, they executed wills. He left all of his estate to his wife. She left all of her estate to her husband. Neither will provided for the contingency of not being survived by the spouse. He died without issue February 9, 1975. She died without issue May 13, 1976.

The wife's personal representative invoked the provisions of Code (1974) § 9-112, Estates and Trusts Article, and requested the Orphans' Court of Baltimore City to direct distribution. It determined that the personal representative should distribute the estate to the heirs of the husband to the exclusion of the heirs of the wife. Pursuant to Code (1974) § 12-502, Courts and Judicial Proceedings Article, an appeal was entered to the Superior Court of Baltimore City. It reversed, holding that the anti-lapse statute directed the bequest back to the wife. She as a deceased person could not take under the statute, its application having been exhausted. Judge Hammerman said in the course of his opinion:

> It is my view that the entire estate of Leona is effectively disposed of here by virtue of the anti-lapse statute, Section 4-403, and thus, her property goes according to Bernard's will. And according to Bernard's will, as we know, the property would then go back to Leona. In my view, only when it arrives back with Leona does it become a non-effective disposition of the property. . . . Thus, it is at this point — when the property arrives back at the starting gate — that 3-101 is triggered, because the anti-lapse statute becomes ineffective then.

Code (1974) § 3-101, Estates and Trusts Article, to which Judge Hammerman referred, states:

> Any part of the net estate of a decedent not effectively disposed of by his will shall be distributed by the personal representative to the heirs of the decedent in the order prescribed in this subtitle.

We granted the writ of certiorari prior to the time this case was heard in the Court of Special Appeals.

Under the old statute the property would have been distributed to the heirs of the husband living at the time of the wife's death, as the Commission report makes clear. It is evident that the Commission not only was of the view that

the earlier construction requiring passage of the legacy to the heirs at law of a deceased legatee was in error, but that there should be a change made. It said:

> The somewhat anomalous result of the property passing to the heirs at law of the deceased legatee even though he left a will was felt by the Commission to be contrary to the intent of the original framers of the statute. Therefore, the second sentence of this Section provides that property which is the subject of a lapsed legacy is to pass "to those persons who would have taken if said legatee had died, testate or intestate, owning the property." The intended result is that such property would pass under the will of the deceased legatee *to the persons nominated by him* — most frequently, the residuary legatees. [*Id.* at 55 (emphasis added).]

Judge Singley referred for the Court in *Stewart v. Whitehurst,* 268 Md. 589, 303 A.2d 393 (1973), to the Commission's intention to change existing law:

> The Comment to § 4-403 emphasizes that it was the intention of the draftsmen to amplify the lapsed legacy statute by providing that a bequest to a deceased legatee who had died testate would pass as provided in the will of the deceased legatee and not to the next of kin of the deceased legatee under the statute of distribution. [*Id.* at 591.]

To reach the result for which they contend, the dissenters and the husband's heirs seek to apply § 3-101 relative to ineffective distribution to the will of the deceased legatee, the husband, not to the will before us, that of the wife. They say that otherwise the lapsed legacy statute would be applied twice. First of all, § 3-101 refers to "the net estate of a decedent not effectively disposed of by his will . . . ." In this instance the reference certainly must be to the net estate of the wife, not to the net estate of the husband. This sum is to be distributed "to the heirs of the decedent . . . ." Certainly. in the context in which this language is used it is the wife in the case at bar, not the husband, who is the decedent. It is

her estate, not his, which we have before us. Secondly, it is the clear intention of the present statute that if a legatee has died testate prior to the death of a testator the legacy shall pass to the nominee of the deceased legatee. When this construction is applied, the legacy here to the husband would come back to the wife as his nominee. This is but one application of the lapsed legacy statute, not two. Thus, this legacy is a "part of the net estate of a decedent not effectively disposed of by [the] will [of that decedent]" and hence is to "be distributed by the personal representative [of that decedent] to the heirs of the decedent in the order prescribed in [Title 3 of the Estates and Trusts Article]." [2]

A holding to the contrary would fail to apply the changes wrought as a result of the Commission report. It must be borne in mind that in its report, which the General Assembly had before it when it enacted this changed statute, the Commission said, "The intended result is that such property would pass under the will of the deceased legatee *to the persons nominated by him* — most frequently, the residuary legatees." *Id.* at 55 (emphasis added). A holding for

---

2. The dissent poses the problem of nonreciprocal wills with the death of the testator prior to the only legatee mentioned in his will, he being identified as A. It says:

> The reasoning of the majority would require distribution of the property to the legatee and according to his will to *A*. But just as Leona is dead, *A* is dead. Again the reasoning of the majority would further require us to give the property to *A*'s heirs just as the property was given to Leona's heirs. But what if *A* had a will and there are persons named therein to take? Do we distribute according to his will? Do we again apply the antilapse statute to legacies in his will? When does the chain end?

Obviously, that situation is not before us. Whether the wills are reciprocal makes no difference. The reason in the case at bar that the ineffective disposition or intestacy statute comes into play relative to the wife's will is because it is she who has made an ineffective disposition. She left to her husband. He predeceased her. He devised his whole estate to her. Thus, under the lapsed legacy statute the estate passes to the nominee of the deceased legatee. Since in this instance his nominee is the wife it is she, not the husband, who has made an ineffective disposition. Although the dissent says it "do[es] not believe that § 3-101 is applicable to the facts here at all," it seeks to use that section as the basis for distribution to the heirs of the deceased legatee.

distribution to the heirs of the husband would give no effect to the "nomination" by him as the deceased legatee.

*Judgment affirmed; appellants to pay the costs.*

*Cole, J., dissenting:*

The effect of the majority's decision today is to hold that, under Maryland's present antilapse statute, if a legatee died intestate prior to the testatrix, his heirs would take from the testatrix directly as if he died intestate owning the property, but if the legatee died testate, nominating a person to take who is deceased at the time of the testatrix's demise, his heirs cannot take because the property reverts (as an ineffective disposition) to the estate of the testatrix who then dies intestate and distribution is made to her heirs. This conclusion is incongruous to me and I, therefore, dissent and state my reasons.

The seeds to this controversy [1] were sown when the legislature in 1969 enacted a new antilapse statute. Chapter 3, § 1, Laws of Maryland of 1969. This statute with minor changes in language and style, but identical in substance is presently codified in the Maryland Code (1974), § 4-403 of the Estates and Trusts Article and provides in pertinent part:

(a) *Death of legatee prior to testator.* Unless a contrary intent is expressly indicated in the will, a legacy may not lapse or fail because of the death of a legatee after the execution of the will but prior to the death of the testator if the legatee is:

(1) Actually and specifically named as legatee;

(2) Described or in any manner referred to, designated, or identified as legatee in the will; or

(3) A member of a class in whose favor a legacy is made.

---

1. The pertinent facts are that Bernard and Leona Hoenig executed reciprocal wills on April 10, 1970 without providing for the contingency that one spouse might predecease the other. Bernard died first.

(b) *Effect of death of legatee.* A legacy described in subsection (a) shall have the same effect and operation in law to direct the distribution of the property directly from the estate of the person who owned the property to those persons who would have taken the property if the legatee had died, . testate or intestate, owning the property.

The statute is applicable to wills executed after January 1, 1970. Maryland Code (1974), § 12-102 (d) of the Estates and Trusts Article; *Stewart v. Whitehurst,* 268 Md. 589, 303 A.2d 393 (1973).

The prior antilapse statute was last codified in Maryland Code (1957, 1964 Repl. Vol.), Art. 93, § 354. It provided:

No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator.

In enacting the new statute the legislature made two major changes. Eliminated from the old statute was the language "as if such devisee or legatee had survived the testator." This language had been construed to pass the legacy as if the legatee had died intestate, thus preventing its passing to those the legatee may have named in a will. *Glenn v. Belt,* 7 G. & J. 362 (Md. 1835). Added to the new statute was language directing that if the predeceased legatee died with a will, the property should be distributed to those named in his will: "If the legatee had died, testate or intestate, owning the property."

There is no question that under the old statute the subject estate would have been distributed to the legatee's heirs

living at the time of the testatrix's death. *Persson v. Dukes,* 33 Md. App. 214, 364 A.2d 86 (1976), *aff'd,* 280 Md. 194, 372 A.2d 240 (1977). The basis for this Court's holding that under the old statute the property passed to those who would have taken if the legatee had died intestate was the inclusion in the old statute of the fiction that the legatee survived the testator. This fiction led the Court to conclude that the legacy could not pass according to the legatee's will because at the actual time of his death he had nothing to will. *McLaughlin v. McGee,* 131 Md. 156, 101 A. 682 (1917); *Glenn v. Belt, supra.* The fiction of the legatee's survival meant that the time of transfer was the death of the testator. In other words, only those heirs of the legatee alive at the time of the *testator's* death were entitled to distribution. *Simon v. Safe Dep. & Trust Co.,* 190 Md. 468, 59 A.2d 199 (1948). The question then, restated, is whether the changes in the statute dictate a result different than that which would have been achieved under the old statute where as here the only beneficiary named in the legatee's will is no longer alive at the death of the testatrix.

The relevant legislative history is contained in the Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland (Henderson Commission Report).[2] That report tells us only that the

---

**2.** The relevant portion of the comments prepared by the Henderson Commission provides:

As formerly construed, § 354 (Md.) operated to transfer property directly to the *heirs at law* of the deceased legatee, even though such person might himself have left a will. *See, Sykes,* §§ 131-134; *Mullen, loc. cit.,* pages 111-112. Thus, if A dies after the execution of B's will which leaves property to A, such property would pass to A's heirs at law even though A left a will which would have left the property to other persons. A second aspect of the former statute was that the property was not subject to administration in the estate of the deceased legatee (or to his debts) but passed directly to his heirs.

The somewhat anomalous result of the property passing to the heirs at law of the deceased legatee even though he left a will was felt by the Commission to be contrary to the intent of the original framers of the statute. Therefore, the second sentence of this Section provides that property which is the subject of a lapsed legacy is to pass "to those persons who would have taken if said legatee had died, testate or intestate, owning the property." The intended result is that such property would pass under the will of the deceased legatee to the persons nominated by him — most frequently, the residuary legatees.

purpose of the changes was to permit a testator's property, in situations where the predeceased legatee left a will, to pass to those nominated in the will. This report does not expressly indicate the correct disposition where the legatee left a will but those named in it are not alive upon the death of the testator.

Important to a resolution of the question before the Court, is an abiding understanding and awareness of the history, purpose and operation of antilapse statutes. At common law, a legacy lapsed where the legatee died in the period between the making of the will and death of the testator. *Billingsley v. Tongue,* 9 Md. 575 (1856); 1 *Jarmin on Wills* 438 (8th ed. London 1951) (1st ed. London 1841-2-3); 6 *Page on Wills* § 50.10 (Bowe-Parker rev. 1962). The term lapse usually meant the falling back of the legacy into the residue of the estate. 80 Am. Jur. 2d *Wills* § 1661 (1975); Black's Law Dictionary 792 (5th ed. 1979). If a legacy had lapsed and the testator had neither provided for dispostion in case of lapse nor included a general residuary clause in the will, the lapsed legacy passed as intestate property of the testator. 6 *Page on Wills, supra* at §§ 50.14 — 50.15.

Today most jurisdictions have enacted statutes which prevent the lapse of legacies to persons who predecease the testator, the purpose being to safeguard the interests of those who would take under the legatee. *Hemsley v. Hollingsworth,* 119 Md. 431, 87 A. 506 (1913). *"These statutes are said to be based upon the presumption that the testator would have made provision for certain relatives of the deceased beneficiary, if his attention had been called to the death of the beneficiary, and he had the opportunity to make such provision."* (Emphasis added). 6 *Page on Wills, supra* § 50.10. In addition, this Court has said that the

---

The second feature of the construction of § 354 (Md.), that the property does not pass through the estate of the deceased legatee, is here expressly made a part of the statute to indicate the intention of the Commission that property passing by virtue of this Section should not be made the subject of two administrations. This has the secondary effect of preventing the testator's property from going to his deceased legatee's creditors, whom the testator undoubtedly never intended to benefit.

purpose of the statute is to transfer the legacy to the legatee's heirs instead of the testator's heirs and to prevent intestacy or escheat to the state. *Mayor & C. C. of Balto. v. White,* 189 Md. 571, 575-576, 56 A.2d 824 (1948).

The English antilapse statute, § 33 of the Wills Act of 1837,[3] has sometimes been said to be the parent enactment of antilapse statutes, but Maryland's antilapse statute predates even the English provision, having been enacted in 1810. Chapter 34, § 4, Laws of Maryland of 1810;[4] *Hemsley v. Hollingsworth,* 119 Md. 431, 87 A. 506 (1913). Although the 1810 statute was amended several times, the substance of the portion relevant here remained unchanged until the enactment of the present provision in 1969.

Cases under the old Maryland statute involving fact patterns very similar to that in the case at bar were presented to this Court on several occasions. In *Glenn v. Belt, supra,* a husband and wife made reciprocal wills. The wife died before the husband. Subsequent to the husband's death, the administrator of his estate claimed that even if the antilapse statute operated to transfer property to the wife, it came back to his representatives by virtue of her will. This Court declared that her testamentary disposition to him did not include the estate devised to her in his will for

---

**3.** Section 33 of the Wills Act of 1837 provided:

Where any person, being a child or other issue of the testator to whom any real or personal estate shall be devised or bequeathed for any estate or interest nor determinable at or before the death of such person, shall die in the lifetime of the testator leaving issue, and any such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will.

**4.** Chapter 34, § 4, Laws of Maryland of 1810 provided:

That from and after the passage of this act, no devise, legacy or bequest, shall lapse or fail of taking effect by reason of the death of any devisee or legatee named in any last will or testament, or any codicil thereto, in the life-time of the testator. but every such devise, legacy or bequest, shall have the same effect and operation in law to transfer the right, estate and interest, in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator.

at her death that property was a mere expectancy of a benefit. The Court held that under the antilapse statute, the property vested in her personal representatives for distribution to her heirs.

In a more recent case, *Persson v. Dukes, supra,* a husband and wife made reciprocal wills. Following an auto accident, the husband died and the wife survived him by only a few hours. Because the wills were executed prior to 1970 the old statute applied. The Court of Special Appeals affirmed the lower court and ruled that the heirs of the husband were the persons entitled to distribution under the antilapse statute and rejected the contention made by the heirs of the wife that extrinsic evidence could be considered on the issue of intent where the words of the will were plain and unambiguous. We affirmed.

Particularly instructive as to the intended operation of antilapse statutes is the English case of *In Re Hensler,* 19 Ch. D. 612 (1881). A father devised property to a son who predeceased him leaving issue who survived; the son by his will gave all his estate to his father. It was held that the gift by the son's will failed and that the devised property went to the son's heirs. The court refused to apply the antilapse statute to transfer the property through the son's will and back to the father. Relevant here is the court's reasoning. "It seems to me that the object and the purpose of the 33rd section was to effectuate the will of the father, and that that object and purpose are satisfied by holding that the son took the estate . . ., *for I cannot hold that the section ought to be extended to any case beyond the one expressly provided for." Id.* at 615 (emphasis added). *In other words antilapse statutes are not to be applied to wills which have already been the subject of an administration, but only to the will before the court.*

Having examined the underlying rationales of antilapse statutes, I turn to the statute in force at the time the wills in the present case were executed. Early on I indicated that the primary purpose which the drafters had in mind in making the 1969 changes was to permit a legacy to be distributed to those nominated in the legatee's will if he

made one. The new statute further carries out the presumption that the testator would have wanted to benefit those whom the legatee wanted to benefit.

Here under Leona's will, Bernard is the legatee. Bernard is dead. Therefore we apply the antilapse statute and the property is distributed as if Bernard died testate or intestate owning the property. He actually died testate. His will said his property should go to Leona. But she is dead.

The trial court concluded that the property came back to Leona's estate and then became an ineffective disposition of property under § 3-101 of the Estates and Trusts Article and thus the property went to her heirs. I do not believe that § 3-101 is applicable to the facts here at all. It seems to me that § 4-403 is sufficient in itself to determine the outcome of this case. If Bernard's nominee is dead and cannot take, then Bernard is regarded as dying intestate and distribution is made under § 4-403. The only manner by which the property could return to Leona's estate would be by application of the antilapse statute a second time — this time to Bernard's will. However, Bernard's will is not before the court and it cannot be the subject of a second administration. Moreover, whatever rationale which would require the application of the statute a second time would require a third, fourth, and ad infinitum cycle. As the court said in *In Re Hensler, supra,* the section ought not be extended to any will beyond the one expressly provided for by the statute. I agree.

Perhaps the problem with the majority's conclusion can be better understood if reciprocal wills are not involved. For instance, suppose the testator died, predeceased by the only legatee mentioned in his will. Suppose further that the legatee left a will naming *A* his legatee and at the time of the testator's death, *A* is also dead. The reasoning of the majority would require distribution of the property to the legatee and according to his will to *A*. But just as Leona is dead, *A* is dead. Again the reasoning of the majority would further require us to give the property to *A*'s heirs just as the property was given to Leona's heirs. But what if *A* had a will and there are persons named therein to take? Do we distribute according to his will? Do we again apply the antilapse stat-

ute to legacies in his will? When does the chain end? The decision of the Court creates the potential for unwarranted results and this Court should be loathe to adopt a construction of a statute which leads to absurd consequences. *Fairchild v. Maritime Air Serv.*, 274 Md. 181, 333 A.2d 313 (1975).

It seems to me that the legislature enacted that part of the Henderson Report consistent with Maryland's past practice, i.e., to carry out the testatrix's intent to benefit those persons the legatee expressed a clear intent to prefer over his heirs. In the absence or failure of such designation, the presumed intent of the testatrix to honor the legatee's heirs would be carried out.

To accept the result reached by the majority is to conclude that the legacy to Bernard lapses and the legislature's recognition that a legatee may die intestate is mere surplusage. It seems to me that the logical conclusion would be that if the legatee named a person to take who was dead and thereby incapable of taking that the legatee would be regarded as having died intestate and his heirs would take. Certainly this would be consistent with the testatrix's intent. It seems ludicrous to me to apply a fiction which would place beneficiaries in a chain composed of persons whom the testatrix would have no intention to benefit and who were strangers.

The majority has made a simple proposition complex. The only purpose of the new law was to let those whom the legatee nominated take when he expressed a preference in a will. There is no indication that the changes were intended to result in the creation of a whole new set of principles inconsistent with the historical purposes and rationales for antilapse statutes.

While the majority did not address it, there remains the question of whether the trial court properly considered evidence of the testatrix's intent. It has long been held that where language of the will is plain and unambiguous, that language will govern, and extrinsic or parol evidence is inadmissible to show that the testator meant something

different from what the language supports. *First National Bank v. White,* 239 Md. 289, 211 A.2d 328 (1965); *Fersinger v. Martin,* 183 Md. 135, 36 A.2d 716 (1944). We have also held that the clear provisions of a will are not to be defeated by speculations or conjectures as to the purpose of the testator. *Hughes v. Safe Deposit and Trust Co.,* 177 Md. 587, 11 A.2d 453 (1940). *Adams v. Morrow,* 42 Md. 434 (1875). The provisions of this will are clear and unambiguous. In any event, it is the statute which is being construed, not the will, and the Superior Court should not have engaged in speculation and conjecture about the intent of the testatrix.

I would reverse.

Judges Eldridge and Davidson have authorized me to state that they join in this opinion.