766 A.2d 233

Bruce Z. SEGAL

v.

Stanford HIMELFARB, et al.

No. 305, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Feb. 5, 2001.

Philip L. O'Donoghue and Jeff Evan Lowinger (Furey, Doolan & Abell, LLP, on the brief), Chevy Chase, for appellant.

Peter F. Axelrad (Susan Stobbart Shapiro and Council, Baradel, Kosmerl & Nolan P.A., on the brief, Stanford Himelfarb and Jordan Himelfarb), Annapolis, Stephen R. Himelfarb, Bethesda, Jordan S. Himelfarb, for appellees.

Argued before JAMES R. EYLER, RAYMOND G. THIEME Jr., (Ret'd, Specially Assigned), and WILLIAM W. WENNER, (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, Jr., Judge, Retired, Specially Assigned.

Bruce Z. Segal, in his capacity as the personal representative of the estate of his aunt, Mrs. Helen Segal, appeals the Order of the Circuit Court for Montgomery County, sitting as the Orphans' Court, pertaining to the distribution of assets from Mrs. Segal's estate. Appellant presents the following question in this appeal, which we have re-phrased for clarity:

Did the trial court err in its interpretation of Maryland's Anti-lapse Statute by ruling that Helen Segal's bequest to Louis Segal passed back to her estate for distribution to her heirs rather than to Louis Segal's contingent beneficiaries in his will?

Perceiving no reversible error, we affirm.

### *Facts*

This case arose from a one-page Last Will and Testament, executed on September 28, 1978, in which Mrs. Helen Segal devised her entire estate to her husband, Mr. Louis Segal, but named no contingent beneficiaries in the event her husband predeceased her. In turn, Mr. Segal's Last Will and Testament, executed on April 14, 1994, bequeathed his entire estate to Mrs. Segal, if she survived him, and provided for contingent beneficiaries in the event his wife predeceased him.[1] Mr. Segal died on February 2, 1995, almost three years prior to Mrs. Segal's death on January 5, 1998. At the time of Mrs. Segal's death, she was survived by appellees—her surviving three brothers Jordan, Stanford, and Hillard Himelfarb.

Following Mrs. Segal's death, her will was admitted to probate in Montgomery County. Appellees contended that, pursuant to Maryland's Anti-lapse Statute, the assets of Mrs. Segal's estate passed to her husband, and then returned to

---

1. Mr. Segal's will named as contingent beneficiaries his nieces and nephews: Lois J. Cohen, Phyllis R. Goodman, Ruth Lawson, Robert Zulin, and Bruce Z. Segal.

Mrs. Segal for distribution to appellees, as her heirs at law. Appellant, however, contended that Maryland's Anti-lapse Statute provided for the estate to be passed to Mr. Segal and then, in turn, to be distributed to appellant and Mr. Segal's other nieces and nephews as Mr. Segal's contingent beneficiaries under his will. As a result of this disagreement, the Circuit Court for Montgomery County, sitting as the Orphans' Court, conducted a meeting of all interested persons entitled to distribution. The court held that the assets of Mrs. Segal's estate passed to appellees. Appellant, in his capacity as personal representative of Mrs. Segal's estate, appeals from that decision.

## Discussion

Helen Segal's will unequivocally provided for her husband, Louis Segal, to be her sole beneficiary. At the time of Helen Segal's death, however, Mr. Segal had been deceased for nearly three years. "At common law, if a devisee or legatee predeceased the testator, absent a clause in the will providing for an alternate disposition of the gift, the devise lapsed." *Gallaudet Univ. v. Nat'l Soc'y of the Daughters of the Am. Revolution,* 117 Md.App. 171, 187, 699 A.2d 531 (1997).

Maryland's first anti-lapse statute, contained in the Acts of 1810, ch. 14, § 4, reversed the common law, and provided that a bequest to a legatee who predeceased the testator would not lapse or fail. Rather, such devises would transfer to the heirs of the deceased legatee as if the legatee had died intestate.[2] Since then, the statute has undergone

---

**2.** The Act provided:
 No devise, legacy or bequest, shall lapse or fail of taking effect by reason of the death of any devisee or legatee named in any last will or testament or any codicil thereto, in the lifetime of the testator; but every such devise, legacy or bequest, shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest, as if such devisee or legatee had survived the testator.
*Gallaudet,* 117 Md.App. at 188, 699 A.2d 531.

several amendments.... [3]

*Id.*

Most recently, the statute was amended as a result of the 1968 report of the Governor's Commission to Revise the Testamentary Law of Maryland, commonly known as the Henderson Commission. In its current form, the Anti-lapse Statute provides:

(a) *Death of legatee prior to testator.*—Unless a contrary intent is expressly indicated in the will, a legacy may not lapse or fail because of the death of a legatee after the execution of the will but prior to the death of the testator if the legatee is:

(1) Actually and specifically named as legatee;

(2) Described or in any manner referred to, designated, or identified as legatee in the will; or

(3) A member of a class in whose favor a legacy is made.

(b) *Effect of death of legatee.*—A legacy described in subsection (a) shall have the same effect and operation in law to direct the distribution of the property directly from the estate of the person who owned the property to those persons who would have taken the property if the legatee had died, testate or intestate, owning the property.

(c) *Creditors of deceased legatee.*—Creditors of the deceased legatee shall have no interest in the property, whether the claim is based on contract, tort, tax obligations, or any other item.

Md.Code (1974, 1991 Repl.Vol.), § 4–403 of the Estates & Trusts Article.[4]

---

**3.** For a more complete history of the Anti-lapse Statute, *see Miller, Construction of Wills* 151–52 (1927); Mullen, *The Maryland Statute Relating to Lapsing of Testamentary Gifts,* 7 Md. L.Rev. 101, 105–06 (1943); 1 Sykes, *Maryland Probate Law and Practice* 131–32 (1956); Northrop & Schmul, *Decedents' Estates in Maryland* § 4–6(d) (1994).

**4.** By § 4–403, our law relating to decedents' estates was entirely revised, and applies to all wills executed on or after January 1, 1970. It made substantial changes in the prior law relating to lapsed legacies

Therefore, the anti-lapse statute applies in this case, and, although Mr. Segal predeceased his wife, the bequest from her passes to him, as if he had died owning the property. Accordingly, we look to Mr. Segal's will, which names his wife as his beneficiary if she survives him. His will further states that his property is to pass to specifically named nieces and nephews in the event that his wife does not survive him.

Appellant contends that the bequest from Mrs. Segal passes to Mr. Segal's contingent beneficiaries. Appellant argues that it is irrelevant whether Mrs. Segal survived Mr. Segal; rather, appellant reasons, in order for the estate to revert back to Helen Segal, she must have been alive at the time her estate actually came into Louis Segal's estate. Appellees, on the other hand, assert that the property reverts to Mrs. Segal's estate because Mrs. Segal did in fact survive her husband, and was therefore the beneficiary to his estate.

The primary issues for us to decide are: 1) did the Orphans' Court apply the anti-lapse statute more than once in this case, and 2) when should the anti-lapse statute be applied—at the time of the legatee's death or at the time the asset actually comes into the legatee's estate?

The Orphans' Court, in providing its ruling on this case, stated:

---

which previously appeared as Maryland Code (1957, 1964 Repl.Vol.), § 354 of the Estates & Trusts Article. That section stated:

No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator.

The Comment to § 4–403 emphasizes that it was the intention of the draftsmen to amplify the lapsed legacy statute by providing that a bequest to a deceased legatee who had died testate would pass as provided in the will of the deceased legatee and not to the next of kin of the deceased legatee under the statute of distribution.

The Court believes that in this case it is the heirs of Mrs. Segal, her siblings, who should take. The Court's rationale is this: I think all parties agree that under the anti-lapse statute, in essence, this asset bounces to the husband's estate.

There isn't any dispute there, and it is very clear that is the case. The question is what occurs once that has happened: Does it stop there and flow down to those who would take under his will as continued beneficiaries or does it bounce back to the wife's.

The Court doesn't believe the anti-lapse statute covers that because the definition, in the Court's view, of the husband's situation doesn't meet the prerequisites for the anti-lapse statute to apply.

Rather, the Court looks at it in an attempt to carry out the intent of Mister. And it is clear that Mister said that if my wife is alive at the time of my death, I want her to have everything I own.

Well, the wife was alive at the time of his death, and therefore, to carry out his intention, this asset should go to the wife.

The Court finds no support for a theory that would say, well, you don't look at really was she alive at the time of his death, which was the contingency as he provided for; rather, you should look to is she alive at the time the asset comes into his estate, which is not the case.

That would not be consistent with what the Court believes his expression of intent was. . . .

■ We agree with the result reached by the trial court. We observe that Mr. Segal's will called for his wife to be his sole beneficiary if she survived him and that she did in fact survive him. We attempt to determine what Mr. Segal's intentions would have been in the event that his wife would not have been the beneficiary to his will.

Appellant suggests that, by naming his nieces and nephews as contingent beneficiaries under his will, Mr. Segal displayed an intention to provide for them if his wife would not benefit

from the disposition. Appellant points out that, although his wife survived him, she was nonetheless deceased at the time her estate came into his estate. Arguably, there is merit to appellant's rationale as to Mr. Segal's intentions under his will. It can be argued that the naming of contingent beneficiaries in his will discloses his intent that if his wife would not benefit from the property then his nieces and nephews should. Based on this rationale, it is reasonable to conclude that Mr. Segal could have simply provided that his estate pass to his wife and her heirs if he had actually intended to benefit his wife's heirs with his estate in the event that his wife would not receive it.

On the other hand, there is also credence to the interpretation suggested by appellees that Mr. Segal did in fact intend for things to take place as the trial court ruled. Appellees assert that, had Louis Segal wished for his wife to have his property while she was alive, and for his nieces and nephews to receive the property upon Mrs. Segal's death, he could have created a life estate for his wife, with the remainder passing to his nieces and nephews.

We find no refuge in the ambiguity of Mr. Segal's intentions as postulated by both rationales. Therefore, to avoid Scylla and Charybdis, our polestar is Mr. Segal's intentions as set forth in the precise words he used in his will. Interpreted in this manner, it is pellucid that Mr. Segal intended for his wife to receive the property if she survived him. This she did. Consequently, his intention is carried out upon the vesting of his property in his wife, and the clause in his will regarding contingent beneficiaries is never effectuated. Although the fact that she is deceased at the time the asset comes into his estate is an irony, that troubling result cannot serve to thwart the strict obedience to the wording of Mr. Segal's will.

■ Appellant suggests that the purpose of the anti-lapse statute is to avoid intestacy. "The purpose of the lapsed legacy statute is to transfer the legacy to the legatee's distributees or 'representatives' instead of the testator's distributees or 'representatives'—to prevent intestacy, not to cause escheat. . . ." *Mayor of Balto. v. White,* 189 Md. 571, 575–76, 56

A.2d 824 (1948). "A fundamental ingrained principle of the testamentary law of Maryland is that when a will contains a residuary clause, the courts will employ every intendment against general or partial intestacy." *Murray v. Willett*, 36 Md.App. 551, 552, 373 A.2d 1303 (1977). We note the obvious—that neither Mr. Segal nor Mrs. Segal would have gone through the trouble of making a will if either had intended to die intestate.

Although we agree with appellant regarding the preference to avoid intestacy, that proposition can be upheld only to the extent that it does not negate the intent of the will in question. We have already indicated that Mr. Segal's intent was quite simply to pass his property to his wife if she survived him. She did in fact survive him; therefore, intestacy in this instance simply cannot be avoided, as doing so would conflict with the direction provided by Mr. Segal's will.

 We reject appellant's claim that Mr. Segal would not have wanted his wife's heirs to take this bequest given to him by his wife. Once his wife survived him, his wife was free to deal with the property as she chose. Appellant's claim cannot control, unless supported by the language of the will, in view of the anti-lapse statute. It is presumed that Mr. Louis Segal intended the statute to apply, and the burden of showing an intent to the contrary is upon those who assert it, here the appellant. This burden has not been met by appellant. Any hardship to appellant that results from this conclusion is chargeable from what the testator said in his will. *Vance v. Johnson*, 171 Md. 435, 441–42, 188 A. 805 (1937). "Statutes for the prevention of lapses are intended, not to defeat the will, but to supplement it, and ought not to control if it be inconsistent with the will to have them control." *Vogel v. Turnt*, 110 Md. 192, 197, 72 A. 661 (1909).

The pivotal case on the issues before us is *Simpson v. Piscano*, 288 Md. 560, 419 A.2d 1059 (1980). In *Simpson*, the wife and husband executed reciprocal wills whereby they left to each other their respective estates. Neither will contained a contingency provision in the event that the spouse did not

survive the testator. The husband died first, and the issue before the Court of Appeals involved the disposition of the wife's estate, and whether the anti-lapse statute provided for the wife's estate to pass to the husband's heirs or back to the wife's heirs. The Court of Appeals held that the property should be distributed to the wife's heirs as if she had died intestate.

Appellant contends that *Simpson* is not controlling in this instance because there were no contingent beneficiaries in *Simpson*, while in the case *sub judice* Mr. Segal did name contingent beneficiaries. Appellees, on the other hand, contend that *Simpson* is directly on point in this case, as the contingency clause in Mr. Segal's will is never triggered, because his wife had in fact survived him, and, therefore, the trial court's decision should be affirmed.

Although we do not reach this decision easily, we agree with appellees' interpretation of the anti-lapse statute. The proper interpretation is that the anti-lapse statute is applicable at the time of the legatee's death, rather than at the time the asset actually comes into the legatee's estate. This is of primary significance in this case because the point in time when the statute is applicable determines to whom the disposition passes. At the time of Louis Segal's death, his wife was still alive and, therefore, if appellee's interpretation is correct, the estate passes back to her according to his will. On the other hand, a different result is yielded if the statute is applied as appellant contends it should be—at the time Helen Segal's estate actually comes into her husband's estate. Any bequest from her to him does not come into his estate until after she dies, as her death is the event that actually triggers the bequest. Keeping in mind that it is the *wife's* estate that is the matter before us, it is necessary to remember that it is the *wife's death* that puts in motion this course of events. Obviously, had the wife not passed away, the disposition of her estate would not be before us. Appellant terms this interpretation the date assumed by the anti-lapse statute. This interpretation places primary consequence on the fact that Mrs.

Segal is not alive at the time the bequest comes into her husband's estate and, accordingly, the adoption of this interpretation necessitates a finding that Mr. Segal's contingent beneficiaries receive the estate, as appellant suggests.

We have reviewed the cases appellant cites in support of his proposition that "the nominees of the deceased legatee are determined, not as of the date of death of the legatee, but as of the date assumed by the statute." We find that those cases do not stand for that contention. The cases cited by appellant do not address whether the court measures the survival of the nominee from the date of death assumed by the statute. We therefore reject appellant's assertion that the Court of Appeals has applied the "date assumed by the statute" as opposed to the date of the death of the legatee.

Appellant also attempts to support his contention by quoting language from *Simpson,* specifically pointing out that the Court of Appeals noted that "[n]either will provided for the contingency of not being survived by the spouse," and that this observation by the *Simpson* Court "suggests that the outcome would have been different if Mr. Hoenig's will contained a contingent bequest, and this different outcome requires the application of the assumed date for lapse purposes."

We disagree. Such language in *Simpson* was mentioned only once throughout the opinion, and was done so as part of the Court's recitation of the facts in that case. *Simpson,* 288 Md. at 563, 419 A.2d 1059. It was never mentioned again during the Court's legal analysis. Therefore, we find no merit to appellant's assertion. Additionally, we note that appellant takes a rather unwarranted leap by asserting that this mention by the Court of Appeals "suggests that the outcome would have been different if *Mr. Hoenig's* will contained a contingent bequest." (Emphasis added.) We find it rather self-serving for appellant to conclude that the Court of Appeals was interested in whether *Mr. Hoenig's* will contained a contingent bequest. Appellant trivializes the point that, if the *Simpson* Court had been concerned with whether either of the wills in that case had provided for a contingent bequest, it would have

certainly been more concerned with Mrs. Hoenig's will, rather than Mr. Hoenig's will regarding that point. Likewise, in the case *sub judice,* had Mrs. Segal's will provided for contingent beneficiaries, there would be no issue before us, because that would have clearly identified the legatee to her bequest once her husband had predeceased her.

Appellant contends that the trial court's interpretation of the anti-lapse statute requires two separate applications of the statute. We disagree. We find that there was but one application of the statute by the trial court in the present case. The anti-lapse statute saved Mrs. Segal's bequest to her husband from lapsing. This was one application of the anti-lapse statute. Mr. Segal's will named his wife as the beneficiary of his estate. As we have already concluded, we adhere strictly to his will in order to comply most accurately with his intent. His will unequivocally provided for his estate to pass to his wife if she survived him. She did in fact survive him—by nearly three years. Therefore, the bequest passed back to her and the anti-lapse statute was not applied a second time. This was the reasoning correctly implemented by the trial court. Additionally, this was clearly the application of the statute utilized by the Court of Appeals in *Simpson.*

As in the present case, the husband in *Simpson* had predeceased his wife. The Court of Appeals addressed whether there had been one or two applications of the statute, stating:

> It is her estate, not his, which we have before us. Secondly, it is the clear intention of the present statute that if a legatee has died testate prior to the death of a testator the legacy shall pass to the nominee of the deceased legatee. When this construction is applied, the legacy here to the husband would come back to the wife as his nominee. This is but one application of the lapsed legacy statute, not two.

*Simpson,* 288 Md. at 565–66, 419 A.2d 1059.

Similarly, in the case *sub judice* we find that there was but one application of the anti-lapse statute, and, therefore, the Orphans' Court correctly decided the disposition of the estate. As in *Simpson,* there was no application of the statute when

the estate passed back to the wife, because she was still alive at the time of the legatee's death. The asset then passed down to her heirs, not by the second application of the anti-lapse statute, but, rather, due to the fact that the property had not been effectively disposed of by her will, pursuant to Md.Code (1974, 1991 Repl.Vol.), § 3–101 of the Estates & Trusts Article, which provides that "[a]ny part of the net estate of a decedent not effectively disposed of by his will shall be distributed by the personal representative to the heirs of the decedent in the order prescribed in this subtitle."

Appellant's basis for his disagreement with the trial court seems to mirror the reasoning used by the dissent in *Simpson*. That explanation provided:

> Perhaps the problem with the majority's conclusion can be better understood if reciprocal wills are not involved. For instance, suppose the testator died, predeceased by the only legatee mentioned in his will. Suppose further that the legatee left a will naming A his legatee and at the time of the testator's death, A is also dead. The reasoning of the majority would require distribution of the property to the legatee and according to his will to A. But just as Leona is dead, A is dead. Again the reasoning of the majority would further require us to give the property to A's heirs just as the property was given to Leona's heirs. But what if A had a will and there are persons named therein to take? Do we distribute according to his will? Do we again apply the anti-lapse statute to legacies in his will? When does the chain end? The decision of the Court creates the potential for unwarranted results and this Court should be loathe to adopt a construction of a statute which leads to absurd consequences.

*Simpson*, 288 Md. at 573–74, 419 A.2d 1059 (citation omitted).

The majority opinion in *Simpson* addressed the dissent's rationale, and stated:

> Obviously, that situation is not before us. Whether the wills are reciprocal makes no difference. The reason in the case at bar that the ineffective disposition or intestacy

statute comes into play relative to the wife's will is because it is she who has made an ineffective disposition. She left to her husband. He predeceased her. He devised his whole estate to her. Thus, under the lapsed legacy statute the estate passes to the nominee of the deceased legatee. Since in this instance his nominee is the wife it is she, not the husband, who has made an ineffective disposition. Although the dissent says it "do(es) not believe that § 3–101 is applicable to the facts here at all," it seeks to use that section as the basis for distribution to the heirs of the deceased legatee.

*Id.,* 288 Md. at 566 n. 2, 419 A.2d 1059.

We agree as we must with the majority opinion in *Simpson* regarding this issue. We are not presented with a situation whereby the basis for the *Simpson* dissent is applicable, as we do not have before us a case whereby the chain fails to end. The situation now before us applies the statute only once, and, subsequently, the bequest passes to intestacy pursuant to § 3–101. Mr. Segal's will provided for his assets to pass to his wife. She was still alive at this time, as she outlived her husband by nearly three years. Therefore, the bequest passed back to his wife. This was merely one application of the anti-lapse statute. The anti-lapse statute is no longer applicable in this situation, because there are no more bequests or legatees. Since the property was never bequeathed by Mrs. Segal, the property passed to her heirs pursuant to § 3–101. Had there been a second application of the anti-lapse statute, as appellant incorrectly contends there was, then the property, because of Mrs. Segal's death, would have passed back to Mr. Segal and his heirs.

Had there been a second application of the anti-lapse statute, we would have first looked to Mrs. Segal's will, pursuant to the statute, in order to determine to whom the bequest should then pass.[5] Mrs. Segal died having made a

---

5. When § 4–403 was amended in 1969, added to the new statute was language directing that if the predeceased legatee died with a will the

will; therefore, a second application would have passed the property according to her will. This obviously would have yielded absurd results, as it would have continued the chain to no end, passing the property back to the husband, and such passing back and forth between the two estates would have continued. It is clear, however, that the trial court did not apply the statute a second time, as Mrs. Segal's will was not a factor in the disposition of this property when the bequest reverted back to her. Rather, it is clear that the trial court applied the rationale set forth in § 3–101 in its disposition of the property. Therefore, we find that the analogy set forth by the dissent in *Simpson* does not apply to the instant case, as it is clear that the Orphans' Court did not apply the statute more than once. We agree with the dissent in *Simpson* pertaining to recognition of the potential for misuse of the anti-lapse statute. We have determined, however, that such misuse did not occur in this case. We follow the holding in *Simpson,* and find that the survival of Mrs. Segal is measured from the date of her husband's death and not, as appellant suggests, from the date "assumed by the statute."

### Conclusion

We hold that the Circuit Court for Montgomery County, sitting as the Orphans' Court, properly ruled on the disposition of Helen Segal's estate. We affirm.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

property should be distributed to those named in his will. *See* anti-lapse statute, provided in full, *supra.*